[No. 2014]

# RALPH W. SHEARER, RESPONDENT, *v.* CITY OF RENO, APPELLANT.

1. DEDICATION—ACTS CONSTITUTING—FILING MAP.

By filing a plat as an addition to a town, and advertising and selling lots, the land shown on the map as streets, avenues, and public parks became dedicated for those purposes.

2. DEDICATION—RIGHT OF INTRUDER.

Notwithstanding the city council might be bound by its order on petition of the property owners, changing the northerly boundary line of an avenue, such order in no way added anything to the alleged title of an intruder upon the land formerly included within and dedicated as the avenue.

3. DEDICATION—WHAT CONSTITUTES.

A dedication of land for public purposes is simply a devotion of it, or an easement in it, to such purposes by the owner, manifested by some clear declaration of the fact.

4. DEDICATION—ACCEPTANCE—REVOCATION.

An acceptance completes the transfer of the property or the easement in it from the owner to the public, and, where there is nothing beyond the owner's declaration without acceptance by the public, the dedication may be revoked at the owner's pleasure.

5. DEDICATION — ESTOPPEL TO DENY DEDICATION — INTERVENING RIGHTS.

If nothing beyond a declaration is made, and no interest in the property is acquired by third persons a dedication of property may be recalled at the pleasure of the owner; but, where contracts for a valuable consideration are made upon the supposed appropriation of the property to the uses indicated, the dedication becomes irrevocable, such contract estopping the owner from asserting any interest except in common with purchasers from him.

6. DEDICATION—NECESSITY OF ACCEPTANCE.

Formal acceptance of a dedication by the public authorities is not necessary to complete the dedication and preclude the original owner from revoking it, although the formal acceptance by the public authorities may be necessary to impose upon them the duty of protecting the property, and keeping it in a condition to meet the uses intended.

7. DEDICATION—REVOCATION—FAILURE TO SUBJECT TO IMMEDIATE USE.

The irrevocable character of a dedication, after sales made with reference thereto and induced thereby, is not affected because the property is not at once subjected to the uses designed.

8. PROPERTY—POSSESSION AS INDICATION OF OWNERSHIP.
    In the absence of any showing of a better title or right, the
    bare possession of property is sufficient to indicate ownership,
    and to warrant a recovery by the occupant against a mere
    intruder.

9. DEDICATION—RIGHTS AS BETWEEN PUBLIC AND INTRUDER.
    Where the owner of land dedicated part of it as an avenue
    by filing a map as an addition to a town, and by selling lots
    with reference thereto, a mere intruder upon land originally
    within the boundaries of an avenue who fenced and built
    thereon acquired no rights as against the public.

10. DEDICATION—CESSATION OF USE—REVERTER.
    Where city authorities close an avenue dedicated as such,
    or release it from the public easement, the right to it reverts
    to the dedicator's estate, and not to an intruder thereon.

APPEAL from Second Judicial District Court, Washoe
County; *John S. Orr*, Judge.

Action by Ralph W. Shearer against the City of Reno.
Judgment for plaintiff, and defendant City of Reno
appeals. **Reversed,** with direction to enter a judgment
in favor of City of Reno.

The facts sufficiently appear in the opinion.

*E. F. Lunsford*, City Attorney of Reno, for Appellant.

*Thomas E. Kepner*, for Respondent.

By the Court, TALBOT, C. J.:

Plaintiff brought this action to quiet title to a triangular
piece of ground in the city of Reno, bordering 109 feet on
the south line of Jones Street, 73.42 feet on the east line
of Washington Street, and 133.35 feet on the northerly
line of Riverside Avenue, as shown on the "Amended
Map of Powning's Addition to the Town of Reno." The
case was tried upon an agreed statement of facts, and,
from a judgment in favor of the plaintiff, and an order
denying a motion for a new trial, the city of Reno, which
was incorporated by acts of the legislature passed in 1903
and 1905, has appealed.

On the original map of Powning's addition to the town
of Reno, filed March 17, 1887, which covered over twenty
blocks and adjacent streets, laid out on land belonging
to C. C. Powning, which adjoined the blocks and streets

of the town of Reno, the ground in controversy stands open, without lines or lot designation, as a part of Riverside Avenue, at the junction of Jones and Washington Streets, thus:

On the amended map of Powning's addition to the town of Reno, filed April 10, 1891, four years later, this

piece of ground is platted as fractional lots 1 and 2, without block designation, in this manner:

This was accomplished by reducing the width of Riverside Avenue as it appeared on the original map.

On the day the original map was filed Powning sold lots in his addition to six different purchasers, and later sold other lots, and for a period of some weeks, beginning prior to the filing of this map and continuing after

such filing, published an advertisement in his paper, the *Nevada State Journal,* extolling the lots, and offering them for sale, and stating that it was intended to have Riverside Avenue one hundred feet in width, and that it was certain to become the fashionable driveway of the country. After the filing of the amended map, in a bond or agreement for the sale of lots directly across the street, he expressly agreed that he would not sell or improve the two gore lots constituting the ground in controversy, and that they should be left and thrown open to the public for all time as a part of Jones and Washington Streets and Riverside Avenue. After making this agreement he sold to other persons lots in the adjoining blocks, from which the view of the river might be partly obscured if buildings were erected on the ground in dispute.

In November, 1900, S. O. Hatfield entered upon the ground in controversy, built a fence around it and a small house on the premises, and lived there about ten months, and until the house burned. Within a period of several months thereafter the fence was gradually carried away by Indians. Through quitclaim deeds executed since Hatfield left the premises the plaintiff has acquired any right which Hatfield obtained to the ground by reason of his improvement or possession, and since his occupancy the taxes have been paid by his grantees.

The controlling questions presented are whether it is necessary to show acceptance by the town or city authorities in order to make the dedication by Powning of land for streets, avenues, or other public uses binding, and whether the plaintiff has such a title or right to the land as will enable him to recover.

1. By filing the plat, and advertising and selling lots, the land shown on the map to be streets, avenues, and public parks became dedicated for those purposes. Powning's intention to so dedicate it is confirmed by his express agreement, made after the filing of the amended map, that the land in controversy should forever remain open as a part of the streets and avenue, and by the fact that he kept this agreement and never sold nor improved this land.

One of the inducements and considerations offered by Powning to purchasers of lots was the width and beauty of Riverside Avenue. He and intending purchasers naturally considered the advantages of having good streets and parks for enhancing or constituting a part of the value of lots, and few, if any, town lots could be sold for satisfactory prices if the owner or dedicator offering the lots for sale could withdraw or inclose the streets and avenues, regardless of whether the city formally accepted, or graded, or improved the streets dedicated.

2. If, after the dedication by filing the original map and selling lots, Powning could withdraw a part of Riverside Avenue, he could withdraw all of the land covered by that avenue and other streets, render the lots he had sold of little or no value, and work great inconvenience to the public. The filing of the original plat and the selling of lots was with the representation and assurance that purchasers would have the benefit of streets and avenues as represented on the map. After such filing and sales of lots he became estopped from reclaiming the ground which he had dedicated for streets, avenues or public uses, and could not withdraw it from the purpose for which it was so dedicated without the consent of the town or city authorities. Notwithstanding the city council may change streets, and may be bound by the order it made on April 26, 1909, on petition of the property owners on Riverside Avenue, changing the northerly boundary line of the avenue, that order in no way adds anything to plaintiff's alleged title.

Among the cases holding that an acceptance is not necessary to make the dedication binding, one of the most clearly written opinions is by Justice Field in *Grogan* v. *Town of Hayward* (C. C.) 4 Fed. 161. The case was very similar to the present one, except that there the plaintiff was better fortified by reason of being the grantee of any right which remained in the dedicator after he had made the dedication. In that case a second map was filed, and the plaintiff claiming under conveyances from Castro, the original dedicator, and through the holder of mortgages which had been

foreclosed, constructed warehouses on part of a block marked "Plaza," and occupied them from 1864 to 1877. In the latter year these warehouses were burned, and the town authorities claimed possession of the ground as a part of its public plaza. It was held that the dedication was irrevocable, and that the plaintiff could not recover, notwithstanding his possession with the warehouses, and the fact that he had acquired any right to the land which belonged to the dedicator after the dedication. In the opinion it is said that under this statement of the case there ought to be no doubt as to the judgment of the court. In the light of adjudications, almost without number, in the courts of the several states, and in those of the United States, the law as to what constitutes a dedication of private property to public purposes, so as to be beyond the recall of the original owner, would seem to be settled.

**3-5.** A dedication of land for public purposes is simply a devotion of it, or of an easement in it, to such purposes by the owner, manifested by some clear declaration of the fact. If nothing beyond the declaration be done—if there be no acceptance by the public of the dedication, and no interest in the property be acquired by third parties—the dedication may be recalled at the pleasure of the owner. But, if the dedication be accepted by the public authorities of the place where the property is situated, or contracts for a valuable consideration be made by others founded upon a supposed appropriation of the property to the uses indicated, the dedication becomes irrevocable. In the one case, the acceptance completes the transfer of the property, or easement in it, from the owner to the public; in the other case, the contract with the owner estops him from asserting any interest except in common with the purchasers from him.

The filing in the office of the county recorder of the map containing a designation of the streets and blocks, as set apart for public uses, was a public declaration of the fact. Whether, if nothing further had been done by him, there would have been any such interest acquired by the public as to forbid a subsequent assertion of

ownership may be questioned. But when, by the sale of the property by reference to the map filed or bounded by streets marked upon it, other parties had become interested in the property set apart for public uses, the owner was precluded from asserting his original rights. The sale by the map, or with reference to the streets upon it, was a sale not merely for the price named in the deed, but for the further consideration that the streets and public grounds designated on the map should forever be open to the purchaser and to any subsequent purchasers in the town. This was an essential part of the consideration. The purchaser took not merely the interest of the grantor in the land described in the deed, but, as appurtenant to it, an easement in the streets and in the public grounds named, with an implied covenant that subsequent purchasers should be entitled to the same rights. The grantor could no more recall this easement and covenant than he could recall any other part of the consideration. They added materially to the value of every lot purchased.

6. No formal acceptance by the public authorities of the dedication, upon which the counsel for the plaintiff so much insist, was essential. A formal acceptance by the public authorities of a dedication may be necessary to impose upon them the duty of protecting the property, and keeping it in a condition to meet the uses designed—as, for instance, to open and repair a street—but it is in no respect essential to complete the dedication and preclude the original owner from revoking it. The dedication is irrevocable when third parties have been induced to act upon it and part with value in consideration of it.

7. Nor is this irrevocable character of the dedication affected because the property is not at once subjected to the uses designed. In many instances, perhaps the greater number, there may be no present need of the land for the purposes contemplated, as in the case of streets and parks laid out upon a tract added to an existing city to meet its supposed future growth, as in the present case, or upon a tract selected as a site for a new town. In such cases it is understood that the property

will only be subjected to the uses intended as it may be from time to time needed to meet the growth of the place. If an immediate subjection were required in such cases, the object of the dedication would be defeated.

In *Archer* v. *Salinas City,* 93 Cal. 43, 28 Pac. 839, 16 L. R. A. 145, it was held that a dedication to the public is effected by the owner of land if he makes and records a map by which the tract is subdivided into blocks and lots which are bounded by streets connecting with streets already laid out, marks a space thereon "Park," and sells lots facing the park, holding it out as an inducement to purchasers. It was also the conclusion of the court that delay on the part of the town in using the land which had been dedicated to it for a park did not impair its right thereto, and that, although acceptance is necessary in case of an offer to dedicate, actual dedication will vest title in the public without acceptance.

The decision in *Abbott* v. *Mills,* 3 Vt. 521, 23 Am. Dec. 222, holds that it is not necessary in order to show dedication of land to the use of the public to prove that it has been appropriated to such use, and that it is sufficient if the owner thereof, by some unequivocal act, manifested his intention of dedicating it to public use, and in consequence of such intention individuals have purchased from him property which would be materially affected if such intention be changed; that the proprietors, after setting apart lands as a public square or common, cannot resume the lands so dedicated or appropriate them to any other use when individuals have been induced by reason of the dedication to purchase lots bordering on such square in expectation that it will so remain.

In *Bartlett* v. *City of Bangor,* 67 Me. 460, it was held that, when the owner of land near a growing city or village divides it into streets and lots, makes a plat of the land showing the streets and lots, and then sells one or more of the lots by reference to the plan, he thereby annexes to each lot sold a right of way in the streets which neither he nor his successors can interrupt or destroy. It was further held that, although the location and platting of streets by the owner of land and the sale

of lots constitute an incipient dedication of the streets to the public, neither the owner nor his successors in title can afterwards revoke such dedication, notwithstanding it does not impose upon the municipality the burden of keeping the streets in repair until they have been accepted by competent authority.

*Northport Association* v. *Andrews*, 104 Me. 342, 71 Atl. 1027, 20 L. R. A. n.s. 976, holds that the dedication of land for a park is effected by the exhibition of a plat on which the space is designated as a park when selling lots bordering thereon, followed by permitting the public to use the tract.

In *Wood* v. *Seely*, 32 N. Y. 116, it is said: "Cases of dedication often rest upon the principle of estoppels *in pais*, it being considered fraudulent on the part of one dedicating his land to public uses to retract, to the prejudice of parties who have purchased on the faith of such dedication."

In *Wiggins* v. *McCleary*, 49 N. Y. 346, it was held that, where the owner of a tract of land lays it out into lots, and intersects it with a street or alley for the convenience of the lots, and sells a lot, bounding it upon a street or alley, the purchase being made in reference to such convenience, the purchase acquires an easement in the street or alley which cannot be recalled, and that such easement is not lost by mere nonuser.

In *Rowan* v. *Town of Portland*, 8 B. Mon. (Ky.) 232, the land between the blocks and the river was left open, with no line separating it from the town, and it was held that the designation by the proprietor of particular parts or spaces as intended for public use, though appearing on the map alone, would be regarded as conclusive dedications of such parts or spaces to the uses designated. It is said, in the opinion: "We are satisfied, therefore, that whatever ground within the limits of the town of Portland, as presented by the plat and plan of said town, appears to have been designated as for public use must be taken to have been irrevocably dedicated to that use by the recorded plan and indorsement thereon, and by

the recorded deeds conveying the lots according to said plan.   *   *   *   The foregoing principles are fully sustained by the cases already referred to in this court, and by the cases of *Buckner* v. *Trustees of Augusta,* 1 A. K. Marsh. (Ky.) 8; *Augusta* v. *Perkins,* 3 B. Mon. (Ky.) 437; *Town of Bowling Green* v. *Hobson,* 3 B. Mon. (Ky.) 478; *Cincinnati* v. *White's Lessee,* 6 Pet. 431, 8 L. Ed. 452; *Barclay* v. *Howell's Lessee,* 6 Pet. 498, 8 L. Ed. 477; *New Orleans* v. *United States,* 10 Pet. 662, 9 L. Ed. 573; *Livingston* v. *Mayor of New York,* 8 Wend. (N. Y.) 87, 22 Am. Dec. 622; *Wyman* v. *Mayor of New York,* 11 Wend. (N.Y.) 486; *Trustees of Watertown* v. *Cowen,* 4 Paige (N. Y.) 513, 27 Am. Dec. 80; *Hills* v. *Miller,* 3 Paige (N. Y.) 260, 24 Am. Dec. 218.   To these might be added many other cases, both in England and America, tending to give efficacy to a sale according to the plan or map of a town, as a dedication of the spaces left apparently and appropriately open for the public use, as streets, public squares, commons, landing places.   *   .*   *   The efficacy of a dedication to public use, arising from the clear indications of the map or plan of a town by which lots have been sold or conveyed, is so well established by the adjudications of the highest tribunals in our own and other countries, and flows so directly from the principles of honesty and good faith, which must be applied to the transactions and the rights of individuals, and is so absolutely essential to preserve, from oppression and outrage, privileges well understood, fully paid for, and necessary to the reasonable enjoyment of that which is expressly granted, that it cannot be shaken by any metaphysical inquiry into the capacity of the public at large to take the benefit of such dedication as a grantee."

In *Kimball* v. *City of Chicago,* 253 Ill. 105, 97 N. E. 257, it was held that, in order to show an intent to dedicate a strip of land as a street or alley, it is not essential that it be designated in terms on the plat, provided such intention is manifested by the consideration of the entire plat.

The decision in *Barclay* v. *Howell's Lessee,* 31 U. S. (6 Pet.) 505, 8 L. Ed. 477, in effect holds that, if it was

intended at the time the survey was made to have the streets extend through to the river, the land was dedicated accordingly, notwithstanding the ground claimed for the streets was not in a situation to be used, and had not been used.

In *Church* v. *City of Portland,* 18 Or. 73, 22 Pac. 528, 6 L. R. A. 259, it was held that the general dedication of land for public squares implies that they are to be enjoyed by the public. In the L. R. A. note to that case, and over the citation of numerous decisions, it is said that, where the owner has laid out village lots intersected with roads and public squares, such roads and public squares are dedicated to public use; that the same rules of law are applicable to the dedication of public squares as for the dedication of highways; that commons are dedicated to public uses, and the original proprietor can never appropriate them exclusively to any private use; that the word "Park" written upon a block or upon a map indicates a public use, and operates conclusively as a dedication of the block; that cases of dedication rest upon the principle of estoppel *in pais;* that it is not competent for the party making a dedication to assert any right over the land so long as it remains in the public use; and that where the owner of a tract of land lays it out into lots, and intersects it with streets, obviously for the convenience of the lots, and purchases of lots are made, there is created in the owners an easement in the streets which cannot be recalled.

In 3 Dillon on Municipal Corporations (5th ed.), sec. 1073, that eminent author states: "As to common-law dedications, the right to make which is not usually taken away or abridged by statutory regulations respecting town plats, the subject may be advantageously presented by referring to the leading case of *City of Cincinnati* v. *White,* decided by the Supreme Court of the United States, which has been extensively followed by the state tribunals, and is everywhere recognized as a sound exposition of the peculiar doctrines of the law respecting the rights which may be parted with by the

owner and acquired by the public under the doctrine of dedication. In that case it appeared that in 1789 the original proprietors of Cincinnati designated on the plan of the town the land between Front Street and the Ohio River as a common, for the use and benefit of the town forever. A few years afterwards a claim was set up to this common by a person who had procured a deed from the trustee in whom the fee of the land was vested, and who had entered upon the common, and claimed the right of possession. The proof of the dedication (marking on the plat, accompanied by public use) being made out to the satisfaction of the court, it sustained the rights claimed by the city."

Over the citation of scores of decisions in numerous states, it is said, in 13 Cyc. 455: "Where the owner of real property lays out a town upon it, and divides the land into lots and blocks, intersected by streets and alleys, and sells any of the lots with reference to such plan, or where he sells with reference to the map of a town or city, in which his land is so laid off, he thereby dedicates the streets and alleys to the use of the public, unless it appears either by express statement in the conveyance or otherwise that the mention of the street was solely for purposes of description, and not as a dedication thereof. On the same principle the owner will be held to have dedicated to the public use such pieces of land as are marked on the plat or map as squares, courts, or parks. The reason is that the grantor by making such a conveyance is estopped, as well in reference to the public as to his grantees, from denying the existence of the easement. Nevertheless the mere laying out of a town and making a plat of it without selling any of the lots will not, in the absence of a statute, constitute a dedication of the streets, and it has also been held essential that the sales be shown to have been rendered effectual by conveyances. According to the great weight of authority a dedication made as hereinbefore described is irrevocable, and the dedicator is forever concluded from exercising any authority or setting up any title to the

same, and that, too, although there has been no formal acceptance by the public authorities. Nor is, the irrevocable character of the dedication affected by the fact that the property is not at once subjected to the uses designed."

There are cases holding that a formal acceptance or the keeping in repair or making of improvements, constituting an implied acceptance, are necessary in order to make a road, street, or alley a public highway, more usually in cases for damages for failure to keep in repair, where they have been opened by some owner who has not dedicated them by filing a map and selling lots, and where the public or owners of property generally in the vicinity are not interested in having them maintained as highways. These cases are distinguishable from the present one because not involving similar considerations pertaining to the purchasers and owners of lots and the public.

**8, 9.** If it could be held that Powning had not dedicated the land in controversy as a part of the streets and avenue, or that he could or did recall it after making the dedication, the title would, in the absence of any conveyance by him, still remain in his estate, and not in the plaintiff. Hatfield traces no title from him, and the same is true of the plaintiff, who claims no right except through Hatfield. In the absence of any showing of a better title or right, the bare prior possession of property is sufficient to indicate ownership and warrant a recovery by the occupant. If no other right to the ground prior to the possession by Hatfield were shown, the plaintiff would prevail. If Hatfield had been in possession of the ground prior to any ownership or title held by Powning, the presumption would arise that Hatfield owned the property, and consequently that the dedication of it by Powning when he was not the owner was ineffective, and plaintiff would be entitled to recover as grantee under the quitclaim deeds carrying Hatfield's right by reason of being first in possession. But, as it is conceded

that Powning was the prior owner of the property, and did not convey it to Hatfield, and, as we have held, dedicated it for a public use, the later possession by Hatfield, and any right or claim acquired through it by the plaintiff, is shown to be subordinate to the right of the public. As Powning, by filing the original map, and selling lots, became precluded from asserting ownership against the easement or right of the public to the use of the streets, Hatfield, a mere intruder, and his grantees are quite as much precluded. If he could acquire a right by fencing and building upon land which had been dedicated as an avenue by another, it might follow that any person could build upon the streets or highway, and successfully maintain an action for the ground taken in possession.

**10.** In *New Orleans* v. *United States,* 35 U. S. (10 Pet.) 662, 9 L. Ed. 573, it was held that a grant from the dedicator of land dedicated to public use and the erection of buildings could not be considered as disproving a dedication nor affecting the vested rights of the public. This would be authority for holding that, if Hatfield had obtained a deed from Powning for the land in dispute after the dedication made by filing the map and selling lots, and any title so obtained by Hatfield, with any right he acquired by his improvements or possession, had been conveyed to the plaintiff, he could not recover against the dedication and the vested right of the public. If the city authorities closed the avenue covering the land in dispute, or authorized it to be freed from the public easement and recalled, the right to it would revert to Powning's estate, and not to the plaintiff, because he holds no title from Powning. (*Harris* v. *Elliott,* 35 U. S. 25, 9 L. Ed. 333.)

The judgment and order are reversed, and the district court is directed to enter a judgment in favor of the city of Reno.