**A. M. GALBREATH et al., Appellants,**

v.

**Walter MILLER et al., Appellees.**

Court of Appeals of Kentucky.

Feb. 23, 1968.

Rehearing Denied April 26, 1968.

———◆———

Donald D. Harkins, Danville, for appellants.

Pierce Lively, Wesley Gilmer, Jr., Danville, for appellees.

CLAY Commissioner.

In this suit appellants sought to have adjudicated their right to use three tracts of land owned by them near Danville for purposes other than residential. The Chancellor decided the property involved was restricted to such use.

In 1953 William Whitehouse owned approximately 23 acres of unimproved vacant land lying east of Lexington Road. He planned the development of a subdivision and recorded a plat thereof. It showed a 40-foot street leading off Lexington Road and bounded on both sides by forty-five 30-foot lots. (All of these lots were numbered.) On the south side of the dedicated street the lots began at a point 371 feet east of Lexington Road. Shown on the plat were "Tract A", containing 1.7 acres, at the southeast corner of Lexington Road and the street; "Tract B", containing .62 of an acre, lying between "Tract A" and the first lot on the south side of the street; "Tract C", containing 4.32 acres, to the rear of the lots on the south side; and

"Tract D", containing 5.9 acres, to the east of the 30-foot lots. (The street dead-ended at "Tract D".)

"Tract A", with substantial frontage on Lexington Road, is the property principally involved in this controversy. Appellants propose to sell part of this tract for use as a gasoline service station.

■ Pursuant to his plan, the original owner sold some of these numbered lots and each deed restricted the property to "residential use". In 1954 the original owner sold to appellants 19 of these lots, designated in the deed as "Lots" (by number). The same deed conveyed "Tract A", "Tract B" and part of "Tract C" (so designated in the descriptive clause). The deed provided:

> "The *lots* herein sold are restricted to residential use and shall not be used for any business purpose whatsoever." (Emphasis added.)

Before proceeding further we will consider whether this deed, in the light of the plat, showed an intention of the developer to subject Tracts A, B and C to the residential restriction which admittedly was imposed upon the numbered lots. It is contended by appellees that a tract is a lot and a lot is a tract and therefore the restriction in appellants' deed covered the entire acreage conveyed. While these two terms may be synonymous and interchangeable for some purposes, they well may be distinguishable when describing property with different characteristics. On the face of the plat it is apparent the 23 acres were divided into two distinct classifications. The numbered lots are uniform residential building lots, whereas the boundaries of the designated "Tracts" contained substantially more acreage than would fit into the building lot plan.

The deed consistently confirms the distinctive differences between the two types of property shown on the plat. The descriptive clause refers to lots as "Lots" and each tract as "Tract". In the light of the plat and the deed description only one conclusion can be drawn with respect to the restriction upon "lots". The restriction was not placed upon "Tracts".

A similar question of construction was presented in Hoge v. Street, 310 Ky. 370, 220 S.W.2d 830. In one part of a will the testator had referred to "livestock, machinery, crops and personal property", and later in the will he had given one of the devisees an option to purchase the "personal property". We held the testator, by the wording of the instrument, had made a distinction between livestock, machinery, crops and personal property and therefore the latter did not include the former. By the same token, where the grantor here designated different types of property by distinctive descriptive names, the restriction upon one designated class did not encompass the other.

It is unnecessary to consider the ambiguity of the word "lots" as used in the deed before us, which, under the principle applied in Connor v. Clemons, 308 Ky. 9, 213 S.W.2d 438, would call for the same conclusion we have reached.[1] It is therefore our opinion that the deed from the original owner to appellants did not impose residential restrictions upon Tracts A, B and C.

■ The remaining question in the case is whether appellants, by their subsequent conduct after the purchase of this property, promulgated and evinced a general scheme for the development of the "Tracts" into residential property and by implication subjected it to the residential restrictions. Appellees invoke the doctrine of "reciprocal negative easements". The general principle is thus stated in Rieger v. Wessel, Ky., 319 S.W.2d 855, 857:

> "If the owner of two or more lots, so situated as to bear the relation to a gen-

---

1. The doctrine of the Connor case is not the "strict construction" rule which was repudiated in McFarland v. Hanley, Ky., 258 S.W.2d 3, and Brandon v. Price, Ky., 314 S.W.2d 521.

eral scheme of development, sells one with an easement of benefit to the land retained, the servitude becomes mutual, and, during the period of restraint, the owner of the lot or lots retained can do nothing forbidden to the owner of the lots sold."

See also 60 A.L.R. 1216 and 144 A.L.R. 916.

In McCurdy v. Standard Realty Corporation, 295 Ky. 587, 175 S.W.2d 28, we observed that the doctrine should be applied with extreme caution because in effect it lodges discretionary power in a court to deprive a man of his property by imposing a servitude through implication.

The basic condition upon which this doctrine rests is that the property sold and subjected to a servitude must be similarly situated and bear a mutual use relationship to the property retained by the grantor. Otherwise there is no foundation for the implication of a reverse restriction. To illustrate, in the Rieger case above cited, the owner of a tract subdivided it into 31 building lots and recorded a plat thereof. He sold 24 of the lots upon which were imposed residential building restrictions. He sought to sell the seven remaining lots free of the restrictions. Since there was an obvious general scheme for residential development of similarly situated lots, and in addition representations were made to the purchasers that the subdivision was restricted, we held the restrictions applied to the last seven lots sold.

The situation before us is markedly different. As we have heretofore observed, both the plat and the deed to appellants exhibited a different classification of "Lots" and "Tracts". From a topographical as well as an area standpoint the "Tracts" bore *no relationship* (except proximity) to the carefully laid out subdivision scheme.

It is true appellants have sold, as lots, certain parts of Tracts B and C. These

deeds did not, however, impose a residential restriction upon such property, and there is no evidence that appellants at any time represented to anyone that the "Tract" areas would be incorporated into the residential subdivision plan.[2] There simply exists no basis upon which we could adjudge that by implication the "Tracts" owned by appellants were subjected to the residential restrictions imposed upon the numbered subdivision lots.

Since the essential facts are not in dispute (most of them were stipulated), the questions involved in this case were matters of law. We believe the Chancellor erred in his conclusions.

The judgment is reversed, with directions to enter a judgment consistent with this opinion.

WILLIAMS, C. J., and HILL, MILLIKEN, OSBORNE, PALMORE and STEINFELD, JJ., concur.

2. It is arguable that the property sold by appellants in lot form out of Tracts B and C was by implication subjected to the residential restriction by reason of the fact that it was added to the subdivision plan, but with that question we are not confronted.