**134 Nev., Advance Opinion 69**
IN THE SUPREME COURT OF THE STATE OF NEVADA

FREDERIC AND BARBARA
ROSENBERG LIVING TRUST,
Appellant/Cross-Respondent,
vs.
MACDONALD HIGHLANDS REALTY,
LLC, A NEVADA LIMITED LIABILITY
COMPANY; MICHAEL DOIRON, AN
INDIVIDUAL; AND FHP VENTURES, A
NEVADA LIMITED PARTNERSHIP,
Respondents/Cross-Appellants.

No. 69399



FILED

SEP 13 2018

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY_____
CHIEF DEPUTY CLERK

THE FREDERIC AND BARBARA
ROSENBERG LIVING TRUST,
Appellant,
vs.
SHAHIN SHANE MALEK,
Respondent.

No. 70478

Consolidated appeals and cross-appeal from a judgment certified as final and a final judgment in an action arising from the purchase of real property and from a post-judgment order awarding attorney fees and costs. Eighth Judicial District Court, Clark County; Kenneth C. Cory, Judge.

*Affirmed in part, reversed in part, and remanded.*

Kim Gilbert Ebron and Karen L. Hanks and Jacqueline A. Gilbert, Las Vegas,
for Appellant/Cross-Respondent Frederic and Barbara Rosenberg Living Trust.

18-35743

Kemp, Jones & Coulthard, LLP, and J. Randall Jones, Spencer H. Gunnerson, and Matthew S. Carter, Las Vegas,
for Respondents/Cross-Appellants MacDonald Highlands Realty, Michael Doiron, and FHP Ventures.

Smith & Shapiro, PLLC, and James E. Shapiro and Sheldon A. Herbert, Henderson,
for Respondent Shahin Shane Malek.

BEFORE THE COURT EN BANC.[1]

*OPINION*

By the Court, HARDESTY, J.:

Appellant/cross-respondent Frederic and Barbara Rosenberg Living Trust (the Trust) purchased a residential lot that adjoins respondent Shahin Malek's residential lot (the Lot), and which also adjoins a golf course. The Lot also includes a small parcel of land (the out-of-bounds parcel), which had previously been an out-of-bounds area between the golf course and the Lot. In this appeal, we must determine whether the Trust can maintain an implied restrictive covenant upon the out-of-bounds parcel. Because we decline to recognize implied restrictive covenants, we affirm the district court as to this issue.

Next, we consider whether the Trust waived any claims it may have had against respondents/cross-appellants MacDonald Highlands Realty, LLC, real estate agent Michael Doiron, and the developer of MacDonald Highlands, FHP Ventures (the MacDonald parties) for

---

[1]The Honorable Ron D. Parraguirre, Justice, voluntarily recused himself from participation in the decision of this matter.

misrepresentations or failing to disclose information in the purchase process of the Trust property. We conclude that the Trust waived its common law claims but did not waive its statutory claims under NRS Chapter 645. Because we reverse this claim, we necessarily reverse the MacDonald parties' award of attorney fees and costs. Finally, we determine that the district court abused its discretion in awarding attorney fees and costs to Malek pursuant to NRS 18.010(2)(b) because the Trust had reasonable grounds to maintain this litigation.

## FACTS AND PROCEDURAL HISTORY

The MacDonald Highlands master planned community is situated around the Dragon Ridge Golf Course in Henderson, Nevada. In the summer of 2012, Malek expressed interest in purchasing the Lot, which was undeveloped and located at 594 Lairmont Place within the MacDonald Highlands master planned community, in order to build a new home. The Lot is located to the south of the ninth hole of the golf course.

Malek also insisted on purchasing the out-of-bounds parcel,[2] which was situated to the north of the Lot, in between the Lot and the ninth hole of the golf course. Below is a map depicting Malek's lot, the out-of-bounds parcel, and the Trust's lot.[3]

---

[2]The record demonstrates that the out-of-bounds parcel is a 0.34-acre dirt area, covered in rocks and shrubs. While it appears to be within the golf course, it is not an in-play area.

[3]This map was included in Malek's answering brief, and its accuracy was not disputed in the Trust's reply brief.

SUPREME COURT
OF
NEVADA

(O) 1947A



The Trust property

The out-of-bound parcel

Malek's lot

55-2

AKA THE FOOTHILLS

In order for Malek to purchase the out-of-bounds parcel, it had to be rezoned from its public/semi-public designation to residential. Relying on MacDonald Highlands' real estate agent Doiron's commitment to rezone and sell the out-of-bounds parcel, Malek purchased the Lot in August 2012. With the help of MacDonald Highlands, he sought and obtained the City of Henderson's approval to rezone the out-of-bounds parcel. In December 2012, while the rezoning was pending, Malek hired surveyors to stake the Lot and out-of-bounds parcel to show where he intended to build.

The rezoning process involved several steps, which the MacDonald parties were familiar with because they had rezoned at least two other parcels of land prior to rezoning the out-of-bounds parcel. First, the MacDonald parties and a third-party company gave notice of and held a homeowners' association community meeting to discuss the rezoning. Next, the City of Henderson held a planning commission meeting. The Henderson City Council eventually passed a resolution approving the rezoning and held a public meeting where they again approved it. The

City's resolution rezoning the out-of-bounds parcel to residential use was adopted on December 8, 2012, and recorded on January 7, 2013. On January 24, 2013, the City of Henderson adopted a new map reflecting the zoning change, and the final map was recorded on June 26, 2013. There were no objections to the rezoning request throughout this process.

At the time Malek inquired about purchasing the Lot and initiated the rezoning process, Bank of America owned the neighboring Trust property to the northwest of the Lot. The Trust property also abuts the ninth hole of the golf course and shares one point of contact with the out-of-bounds property on the southeast corner of the Trust property. Bank of America received notice of the rezoning but did not object.

In February 2013, Barbara Rosenberg sent a letter of intent to Bank of America expressing intent to purchase the Trust property "As-Is," "Where-is," and "With All Faults." In March 2013, the Trust signed a written purchase offer and attached a proposed residential purchase agreement that included those terms. The residential purchase agreement contained several waivers and obligations to be undertaken on the part of the Trust, the sellers, and the sellers' agents, including the Trust's waiver of its right to perform a survey and determine the boundary lines surrounding the Trust property. The purchase agreement also provided the Trust with a 12-day due diligence period to inspect the Trust property, and included a waiver of claims against all brokers and their agents. The MacDonald parties are listed as the agent and broker for Bank of America in the purchase agreement. The Trust took title in May 2013.

Malek's deed for the out-of-bounds parcel was recorded on June 26, 2013. When the Trust learned about Malek's purchase of the out-of-bounds parcel, it filed a complaint seeking, among other things, to

establish an easement against the MacDonald parties and Malek. The Trust filed an amended complaint, reasserting the easement claim against the MacDonald parties and Malek, and also including a separate claim for an implied restrictive covenant against Malek alone to enjoin him from constructing anything on the out-of-bounds parcel. The Trust further sought monetary damages against the MacDonald parties for negligent and intentional misrepresentations, for real estate broker violations under NRS Chapter 645, and for failure to make various disclosures, including failing to disclose the zoning change of the out-of-bounds parcel.

Both Malek and the MacDonald parties brought motions for summary judgment on all of the Trust's claims. The MacDonald parties argued that the purchase agreement placed the burden on the Trust to investigate boundary and zoning issues, the proper disclosures were made, and the Trust waived any claims by signing the purchase agreement. Malek and the MacDonald parties argued that there is no easement or implied restrictive covenant for light, air, view, or privacy in Nevada.[4]

The district court granted both Malek and the MacDonald parties' motions for summary judgment, determining that (1) the Trust had sought, and then agreed, to purchase the Trust property as-is from the seller; (2) the Trust's claims failed as a matter of law because Nevada law does not recognize the types of easements and covenants the Trust sought; and (3) the Trust voluntarily and knowingly waived any claims it may have had against the MacDonald parties. The district court subsequently awarded the MacDonald parties and Malek attorney fees and costs.

---

[4]Malek also moved for summary judgment on his counterclaim for slander of title, which the district court denied. However, Malek and the Trust stipulated to dismissing that counterclaim.

## DISCUSSION

On appeal, the Trust argues that the district court erred in granting summary judgment for both the MacDonald parties and Malek, and, further, abused its discretion in granting them attorney fees and costs. We first discuss the Trust's claim for an implied restrictive covenant against Malek to determine whether Nevada law has previously recognized such a doctrine and, if so, whether the Trust has established an implied restrictive covenant in this case.[5] We then consider whether the Trust waived all of its other claims against the MacDonald parties, and, in doing so, we consider whether reversal of the MacDonald parties' award of attorney fees and costs is warranted. Finally, we address whether the district court abused its discretion in awarding attorney fees and costs to Malek.

*The district court did not err in concluding that Nevada law has not recognized an implied restrictive covenant for use*

The Trust sought an implied restrictive covenant over the out-of-bounds parcel, under the terms of which the out-of-bounds parcel must perpetually be used as part of the golf course. The district court rejected this claim, concluding that under Nevada law, "there is not an implied easement or implied restrictive covenant requiring property formerly owned

---

[5]In its first amended complaint, the Trust asserted a claim for easement against both the MacDonald parties and Malek. The district court concluded that the Trust was truly seeking an implied negative easement for light, air, and view, which Nevada law prohibits. We affirm the district court's grant of summary judgment on this issue as the Trust concedes that Nevada law does not recognize such an easement, the Trust offers no argument on appeal as to the easement claim, and Nevada law clearly precludes an easement for view. *See Probasco v. City of Reno*, 85 Nev. 563, 565, 459 P.2d 772, 774 (1969) ("Nevada has expressly repudiated the doctrine of implied negative easement of light, air and view for the purpose of a private suit by one landowner against a neighbor.").

 

by a golf course to remain part of the golf course indefinitely, especially where that property was not a part of the playable grass area of the golf course." The district court also concluded that the Trust did not provide evidence demonstrating that an implied restrictive covenant would preserve anything other than its view, light, or privacy. The Trust argues that this was error because Nevada law has recognized implied restrictive covenants and implied easements.

We review orders granting summary judgment de novo. *Wood v. Safeway, Inc.*, 121 Nev. 724, 729, 121 P.3d 1026, 1029 (2005). Summary judgment is only appropriate "when the pleadings and other evidence on file demonstrate that no genuine issue as to any material fact [remains] and that the moving party is entitled to a judgment as a matter of law." *Id.* (alteration in original) (internal quotation marks omitted). "A factual dispute is genuine when the evidence is such that a rational trier of fact could return a verdict for the nonmoving party." *Id.* at 731, 121 P.3d at 1031. "[W]hen reviewing a motion for summary judgment, the evidence, and any reasonable inferences drawn from it, must be viewed in a light most favorable to the nonmoving party." *Id.* at 729, 121 P.3d at 1029.

The Trust points us to our decision in *Shearer v. City of Reno*, 36 Nev. 443, 136 P. 705 (1913), to demonstrate that we have previously recognized implied restrictive covenants. In *Shearer*, a landowner sold several lots, expressly agreeing that he would not improve or sell the surrounding lots. *Id.* at 447, 136 P. at 707. The landowner dedicated the surrounding lots "to the public for all time," and filed a plat identifying so. *Id.* We acknowledged that "[t]he filing of the original plat and the selling of lots was with the representation and assurance that purchasers would have the benefit of streets and avenues as represented on the map." *Id.* at 448,

136 P. at 707. We further explained that "[t]he purchaser took not merely the interest of the grantor in the land described in the deed, but, as appurtenant to it, an easement in the streets and in the public grounds named, with an implied covenant that subsequent purchasers should be entitled to the same rights." *Id.* at 450, 136 P. at 708.

While we recognized an implied covenant in *Shearer*, it was in the context of an express agreement and a public land dedication. Here, the out-of-bounds parcel was part of a common development, where, as counsel for the Trust conceded during oral argument, there was no express agreement that the out-of-bounds parcel would remain part of the golf course, or even that the golf course itself would remain a golf course in perpetuity. Further, there was no public dedication for the golf course. As the parties acknowledge, the golf course was not public land; rather, those wanting to use the golf course had to have memberships or pay to play. Thus, the Trust is not seeking the type of implied covenant that we discussed in *Shearer*. Further, it is clear that we did not adopt in *Shearer* the type of covenant sought by the Trust—an implied restrictive covenant based on the existence of a common development scheme.

The Trust also points to our decision in *Boyd v. McDonald*, in which we recognized implied easements for ingress and egress across another's property. 81 Nev. 642, 647, 408 P.2d 717, 720 (1965). The Trust uses the term "implied easement" interchangeably with "implied restrictive covenant"; however, the two property interests are distinct. As we explained in *Boyd*, an implied easement is

> an easement created by law. It is grounded in the court's decision that as to a particular transaction in land, the owner of two parcels had so used one to the benefit of his other that, on selling the benefited parcel, a purchaser could reasonably have

 

> expected, without further inquiry, that these
> benefits were included in the sale.

*Id.* at 649, 408 P.2d at 721. An implied easement gives a person the right "to use in some way the land of another." *Id.* at 647, 408 P.2d at 720 (internal quotation marks omitted). In this case, however, it is undisputed that the Trust did not seek a *right to use* the property of another, as the plaintiffs did in *Boyd*. Rather, the Trust sought to *restrict the use* by another of his or her own property. The Trust claimed that a restrictive covenant should be implied from the existence of the common development plan, requiring the out-of-bounds parcel to remain part of the golf course in perpetuity.[6]

While we outlined the requirements for the creation of an implied easement for use of another's land in *Boyd*, we did not address the doctrine of implied restrictive covenants that involves restrictions imposed upon an owner relating to the use of his or her own land. *See Boyd*, 81 Nev. at 647, 408 P.2d at 720 (explaining that "the three essential characteristics of an easement by implication are (1) unity of title and subsequent separation by a grant of the dominant tenement; (2) apparent and continuous user; and (3) the easement must be necessary to the proper or reasonable enjoyment of the dominant tenement"). Thus, although the Trust correctly points out that we recognized implied easements, it conflates the relief sought in *Boyd* with the relief it seeks here.

---

[6]Situations, as here, where a property owner seeks to enforce a restrictive covenant based on a common development are also generally referred to as "implied reciprocal covenants," as well as "reciprocal negative easement[s]" or "implied servitude[s]." 20 Am. Jur. 2d *Covenants, Etc.* § 156 (2017).

 

As the district court stated, we have not previously acknowledged implied restrictive covenants in the context of a common development scheme, nor have we stated that one exists under Nevada law. While other courts have recognized them, implied restrictive covenants are generally disfavored. 20 Am. Jur. 2d *Covenants, Etc.* § 155 (2015); *see also* 9 Richard R. Powell, *Powell on Real Property* § 60.03[1] (2000) (explaining that because implied covenants "involve[ ] a relaxation of the writing requirement," many courts are cautious to infer a restrictive covenant only when it is "obvious and clearly intended"). Other jurisdictions have acknowledged that implied restrictive covenants "should be applied with extreme caution because in effect it lodges discretionary power in a court to deprive a [person] of his [or her] property by imposing a servitude through implication." *Walters v. Colford*, 900 N.W.2d 183, 191 (Neb. 2017) (alterations in original) (quoting *Galbreath v. Miller*, 426 S.W.2d 126, 128 (Ky. 1968)). We are not persuaded to recognize an implied restrictive covenant in this case based on the facts before us.[7] Moreover, even assuming implied restrictive covenants exist under Nevada law, the Trust has not proved that an implied restrictive covenant existed in this case. *See* 20 Am. Jur. 2d *Covenants, Etc.* § 155 (2015) (explaining that the party attempting to establish the implied restrictive covenant bears the burden of proving it exists).

---

[7]The Trust argues that under *Jackson v. Nash*, 109 Nev. 1202, 866 P.2d 262 (1993), whether an implied restrictive covenant exists is a question of fact. We note that *Jackson* involved an implied easement, not an implied restrictive covenant. 109 Nev. at 1208, 866 P.2d at 267. Moreover, we can conclude from the undisputed facts that no implied restrictive covenant existed here.

In arguing in favor of an implied restrictive covenant, the Trust relies upon and applies the elements of an implied easement from *Boyd*. But those elements do not apply where a party seeks to establish an implied restrictive covenant. Though the Trust has failed to argue the specific elements of an implied restrictive covenant, we nevertheless discern from the evidence presented that the requirements have not been met here. A restrictive covenant by implication may arise when the following elements are established: (1) there is a common grantor, (2) there is "a designation of the property subject to the restrictions," (3) there exists "a general plan or scheme of restriction for such property," and (4) the restrictions run with the land. 20 Am. Jur. 2d *Covenants, Etc.* § 156 (2015). Thus, there must be a restriction "evidencing a scheme or intent that the entire tract should be similarly treated, so that once the plan is effectively put into operation, the burden placed upon the land conveyed is by operation of law reciprocally placed upon the land retained." *Id.* Implied restrictive covenants are "enforceable against the grantor or a subsequent purchaser of the lot from the grantor with notice, either actual or constructive." *Id.*

The Trust established the first element for an implied restrictive covenant as MacDonald Highlands was the common grantor of the residential lots as the developer of the master planned community. *See id.* However, the Trust failed to establish the remaining elements. Primarily, the Trust did not demonstrate that MacDonald Highlands intended to restrict the use of the out-of-bounds parcel. *See id.* (explaining that it must be shown that the common grantor, "in the various grants of the lots [in the common development scheme], . . . included some restriction, either affirmative or negative, for the benefit of the land retained, evidencing a scheme or intent that the entire tract should be

 

similarly treated"). In the district court, the Trust characterized the scope of the implied restrictive covenant as one for view. On appeal, the Trust states that characterization was not its contention, but that it instead seeks to ensure the out-of-bounds parcel remains part of the golf course. However, the Trust does not point to any evidence in the record demonstrating that the out-of-bounds parcel was used as part of the golf course or that the sale of the out-of-bounds parcel diminishes the ability to use the golf course. Notably, it is undisputed that the actual golf course remains a golf course. Additionally, there is no evidence in the record before us that the MacDonald parties ever expressed, implied, or intended that the out-of-bounds parcel would perpetually be part of the golf course or that Malek or his predecessors in interest were on either actual or constructive notice of such a restriction. *See id.* (noting that "[a] court's primary interest in [determining whether an implied restrictive covenant exists] is to give effect to the actual intent of the grantor" and clarifying that a subsequent purchaser will only be bound by an implied restrictive covenant when on actual or constructive notice).

Therefore, the Trust has failed to demonstrate that the elements of an implied restrictive covenant were met in this case. *See* 20 Am. Jur. 2d *Covenants, Etc.* § 155 (2015) (explaining that "in order for a restriction to be thus created, the implication must be plain and unmistakable, or necessary" (footnote omitted)). Accordingly, we conclude that no genuine issue of material fact remains, and the district court correctly granted summary judgment on this claim. *See Wood*, 121 Nev. at 729, 121 P.3d at 1029.

 

*The Trust waived its common law, but not statutory, claims against the MacDonald parties*

The district court determined that the Trust's claims against the MacDonald parties for unjust enrichment, fraudulent or intentional misrepresentation, negligent misrepresentation, real estate broker violations of NRS Chapter 645, and declaratory relief failed because the Trust insisted and agreed upon taking the Trust property as-is and thus knowingly, intentionally, and voluntarily waived these claims. The Trust argues that the district court erred in determining that it waived its claims against the MacDonald parties because the MacDonald parties had a common law and statutory duty to disclose that the out-of-bounds parcel had been rezoned and that the lot lines had been changed in a way that reduced the Trust property's value.

Generally, "[n]ondisclosure by the seller of adverse information concerning real property . . . will not provide the basis for an action by the buyer to rescind or for damages when property is sold 'as is.'" *Mackintosh v. Jack Matthews & Co.*, 109 Nev. 628, 633, 855 P.2d 549, 552 (1993). Moreover, "[l]iability for nondisclosure is generally not imposed where the buyer either knew of or could have discovered the defects prior to the purchase." *Land Baron Invs., Inc. v. Bonnie Springs Family LP*, 131 Nev. 686, 696, 356 P.3d 511, 518 (2015). The general rule foreclosing liability for nondisclosure when property is purchased as-is does not apply when

> the seller knows of facts materially affecting the value or desirability of the property which are known or accessible only to [the seller] and also knows that such facts are not known to, or within the reach of the diligent attention and observation of the buyer.

*Mackintosh*, 109 Nev. at 633, 855 P.2d at 552 (alteration in original) (internal quotation marks omitted).

SUPREME COURT
OF
NEVADA

(O) 1947A

We agree with the district court that the Trust waived its common law claims of negligent misrepresentation, fraudulent or intentional misrepresentation, and unjust enrichment. The record demonstrates that the Trust expressly agreed that it would carry the duty to inspect the property and ensure that all aspects of it were suitable prior to close of escrow, and the information regarding the lot lines was reasonably accessible to the Trust. Accordingly, we conclude that the Trust's agreement to purchase the property as-is foreclosed its common law claims against the MacDonald parties, and thus, the district court did not err in granting summary judgment on the Trust's common law claims. *See Wood*, 121 Nev. at 729, 121 P.3d at 1029.

However, we agree with the Trust that it did not waive its statutory claims of real estate broker violations. In its complaint, the Trust alleged that the MacDonald parties violated the duties and obligations required under NRS 645.252. NRS 645.252 provides, in pertinent part, as follows:

> A licensee who acts as an agent in a real estate transaction:
>
> 1. Shall disclose to each party to the real estate transaction as soon as is practicable:
>
> (a) Any material and relevant facts, data or information which the licensee knows, or which by the exercise of reasonable care and diligence should have known, relating to the property which is the subject of the transaction.

Under NRS 645.255, except for the duty to present all offers to the client, "no duty of a licensee set forth in NRS 645.252 or 645.254 may be waived." Thus, the Trust could not waive its statutory claims against the MacDonald parties. Accordingly, we conclude that the district court erred in granting summary judgment on the basis that the Trust waived the duty of disclosure

 

pursuant to NRS 645.252. Because we reverse the district court's order granting summary judgment in favor of the MacDonald parties on the Trust's statutory claims, we necessarily reverse the attorney fees and costs awarded to the MacDonald parties.[8] *See Bower v. Harrah's Laughlin, Inc.*, 125 Nev. 470, 494-95, 215 P.3d 709, 726 (2009) ("[I]f we reverse the underlying decision of the district court that made the recipient of the costs the prevailing party, we will also reverse the costs award.").

*The district court abused its discretion in awarding attorney fees and costs to Malek*

The district court granted Malek's motion for attorney fees and costs pursuant to NRS 18.010(2)(b), which states that attorney fees may be awarded to a prevailing party if "the claim, counterclaim, cross-claim or third-party complaint or defense of the opposing party was brought or maintained without reasonable ground or to harass the prevailing party." During the hearing on Malek's motion for attorney fees and costs, the district court concluded that the Trust's claims were not frivolous when initially filed. However, the district court concluded that after the Trust received Malek's motion for summary judgment, the Trust lacked reasonable grounds to maintain the litigation, even if it initially had reasonable grounds to file suit, because of the facts and law in Malek's motion. Therefore, the district court awarded Malek the attorney fees he

---

[8]We reverse the attorney fees and costs awarded to FHP Ventures on the separate ground that it was not included in the offer of judgment. Further, because we reverse the award of attorney fees and costs to the MacDonald parties, we do not reach their argument on cross-appeal that the district court erred in not granting post-judgment interest on their award.

incurred from the time he filed his motion for summary judgment until the date he filed his motion for attorney fees, which totaled $18,417.50. The district court also awarded Malek $7,568.50 in costs.

The Trust argues that the district court abused its discretion in determining that its claims were frivolously maintained.[9] We agree. We review a district court's attorney fees decision for an abuse of discretion. *See Baldonado v. Wynn Las Vegas, LLC*, 124 Nev. 951, 967, 194 P.3d 96, 106 (2008). A district court may award attorney fees to a prevailing party when it finds that the opposing party brought or maintained a claim without reasonable grounds. NRS 18.010(2)(b). For purposes of NRS 18.010(2)(b), a claim is frivolous or groundless if there is no credible evidence to support it. *Semenza v. Caughlin Crafted Homes*, 111 Nev. 1089, 1095, 901 P.2d 684, 687-88 (1995). "Although a district court has discretion to award attorney fees under NRS 18.010(2)(b), there must be evidence supporting the district court's finding that the claim or defense was unreasonable or brought to harass." *Bower*, 125 Nev. at 493, 215 P.3d at 726.

The district court's order pointed to the facts and law included in Malek's motion for summary judgment to support its finding that the Trust lacked reasonable grounds to maintain this suit. Though we agree

___

[9]The Trust makes additional arguments as to how the attorney fees award was an abuse of discretion, including that the district court did not conduct the required analysis under *Brunzell v. Golden Gate National Bank*, 85 Nev. 345, 455 P.2d 31 (1969). While we agree that the district court was required to conduct a *Brunzell* analysis, *see Shuette v. Beazer Homes Holdings Corp.*, 121 Nev. 837, 864-65, 124 P.3d 530, 548-49 (2005), we do not further address these arguments as they are not necessary to the resolution of this issue. *See First Nat'l Bank of Nev. v. Ron Rudin Realty Co.*, 97 Nev. 20, 24, 623 P.2d 558, 560 (1981) ("In that our determination of the first issue is dispositive of this case, we do not reach the second issue . . . .").




that the evidence produced and Nevada's current jurisprudence does not fully support the Trust's suit, we disagree that the Trust lacked reasonable grounds to maintain the suit, as it presented a novel issue in state law, which, if successful, could have resulted in the expansion of Nevada's caselaw regarding restrictive covenants. *See Rodriguez v. Primadonna Co., LLC*, 125 Nev. 578, 588, 216 P.3d 793, 801 (2009) (affirming the district court's denial of attorney fees under NRS 18.010(2)(b) where the claim "presented a novel issue in Nevada law concerning the potential expansion of common law liability"). Though we understand the Legislature's desire to deter frivolous lawsuits, this must be balanced with the need for attorneys to pursue novel legal issues or argue for clarification or modification of existing law. *See, e.g., Stubbs v. Strickland*, 129 Nev. 146, 153-54, 297 P.3d 326, 330-31 (2013) (determining that a party did not file suit for an improper purpose because he argued for a change or clarification in existing law). Accordingly, we reverse the district court's award of attorney fees and costs to Malek.

## CONCLUSION

We determine that Nevada law has not recognized implied restrictive covenants based on a common development scheme, and we are not persuaded to adopt the doctrine based on the record before us. We further hold that the Trust could not waive its statutory claims under NRS Chapter 645 against the MacDonald parties, and, therefore, we reverse the district court's grant of summary judgment on this issue and reverse the district court's award of attorney fees and costs to the MacDonald parties. Finally, we conclude that the district court abused its discretion in awarding attorney fees and costs to Malek pursuant to NRS 18.010(2)(b) as the Trust presented a novel legal issue, and attorneys should not be prohibited from pursuing novel legal issues or arguing for modification or expansion of

 

existing law. As such, we affirm in part, reverse in part, and remand for proceedings consistent with this opinion.

_____, J.
Hardesty

We concur:

_____, C.J.
Douglas

_____, J.
Cherry

_____, J.
Gibbons

_____, J.
Pickering

_____, J.
Stiglich