OPINION
 

 By the Court, Hardesty, J.:
 

 In these consolidated appeals, we determine whether class action certification is appropriate in constructional defect cases. Because single-family residence constructional defect litigation often raises
 
 *843
 
 diverse, individualized claims and defenses, we conclude that, generally, the requirements for class action certification cannot be met. Consequently, the district court erred in granting class action certification in this case, and we reverse the judgment.
 

 We also take this opportunity to address other important issues affecting our constructional defect jurisprudence that may arise on remand. In this, we recognize that attorney fees are damages in constructional defect cases that are nevertheless to be determined by the court and that prejudgment interest should be calculated on repair costs even when those costs have not yet been expended.
 

 FACTS AND PROCEDURAL HISTORY
 

 Beazer Homes Holdings Corp. and Beazer Homes Nevada, Inc. (Beazer Homes) constructed and sold 206 single-family residences between 1994 and 1999 on a 40-acre residential subdivision known as The Villages at Craig Ranch in North Las Vegas, Nevada.
 

 In April 2000, three homeowners, individually and as proposed class representatives, filed a complaint against Beazer Homes alleging constructional defects to their homes. The homeowners claimed that their houses’ foundations and concrete slabs were damaged by expansive soils, a condition in which the soils beneath a house expand when exposed to water and contract when the soil dries. This condition can cause a house’s foundation and concrete slab to crack and separate. The homeowners also alleged over 30 additional constructional defects unrelated to the soils condition. The complaint asserted breach of express and implied warranties, negligence, and negligent misrepresentation by Beazer Homes as theories of liability. Beazer Homes, in answer, generally denied liability and asserted, among other things, the specific defenses of comparative negligence and mitigation of damages. Four months after the complaint was filed, the homeowners sought class action certification under NRCP 23, relying on the expansive soils claim as the predominant question justifying certification. Beazer Homes objected to class action certification, arguing that (a) the theories of relief and defenses were different depending upon whether the particular homeowner was the original purchaser or merely a current owner; (b) the cause of the expanding soils required individualized proof of the source of the water, thus implicating the comparative negligence and mitigation of damages defenses for each residence; and (c) the additional, unrelated constructional defects were not common or typical to all residences. Without documenting any NRCP 23 analysis, the first district court judge assigned to the case granted class certification, concluding simply that “[t]he court has considerable discretion to fashion a plan or proceedings addressing areas where there are variations in plans, contractors, etc.’ ’ Although the order granting certification did not identify the members of the class, a subsequent notice of class ac
 
 *844
 
 tion declared that the members consisted of the then current owners of homes in The Villages at Craig Ranch.
 

 After the initial class action certification and following considerable discovery, Beazer Homes sought decertification of the homeowners’ class action. Beazer Homes reminded the newly assigned district court judge that certification was originally granted with respect to the common question of expansive soils. However, according to Beazer Homes, subsequent discovery demonstrated that a number of houses were not impacted by expansive soils and that individualized proof for the cause of expansive soils was required because of grading, landscaping, changes to drainage, lot slopes, grade preparation and retaining walls. Beazer Homes also argued that the class could not maintain a claim for negligent misrepresentation because many members in the class were not original purchasers and Beazer Homes had made no representations to subsequent homeowners. The district judge denied decertification without any NRCP 23 analysis, but he cautioned the homeowners “to make certain their evidence comports with a class action requirement, and we’ll kind of see it as it goes.”
 

 The case proceeded to trial with the homeowners presenting evidence of essentially three defects: (1) expansive soils causing changes to foundations or concrete flatwork, (2) defective framing and dry walling, and (3) leaking windows caused by defective sealant. The homeowners presented the case using group exhibits and summaries, and because the case was a class action, the district court relaxed normal evidentiary foundations and declined to take evidence of defects in every home. Instead, the homeowners relied on extrapolation or statistical inferences to project that certain defects existent in a few homes were in existence or would manifest in other homes.
 

 The homeowners admitted that expansive soils varied among the lots within the subdivision and proposed four different categories of repair. In defense of the expansive soils claim, Beazer Homes asserted that it had provided warnings to the homeowners in a manual, advising them to keep water away from the foundation and avoid landscaping close to the home. The homeowners’ expert testified that landscape irrigation by owners contributed to faulty soil conditions and the drainage varied. Beazer Homes contended, therefore, that the homeowners were comparatively negligent for damages caused by expansive soils.
 

 Beazer Homes also suggested that the defects in framing and drywall were not common or typical to the class, pointing out that the quality of the work by different construction crews varied among the houses. In some houses, shear walls were inadequately supported, and in some houses framing straps were missing. In many houses, construction crews installed the proper number of
 
 *845
 
 drywall nails, while other homes were missing drywall nails altogether. Stucco cracks varied among the homes and Beazer Homes claimed that many of those cracks had resulted from normal causes.
 

 The record indicates further that the existence of window leaks was also not common or typical to the class. Evidence of window leaks was provided by extrapolation. Some homes had windows that leaked, while windows in other homes functioned properly. The homeowners’ expert estimated that 1319 windows were defective, while Beazer Home’s expert acknowledged that approximately 2000 windows needed repair.
 

 During trial, Beazer Homes renewed its motion to decertify. In response, the district court was not persuaded to overturn the first district court judge’s decision to certify the class. Once again, no NRCP 23 analysis was conducted. Instead, the district court concluded that while a class action was “certainly not a perfect vehicle and leaves a great deal to be desired,” it was the most efficient method for trying the case. At the conclusion of trial, Beazer Homes again sought decertification of the class. The district court acknowledged that “the class action vehicle is awkward for this kind of case,” but denied decertification because it would mean losing four months of trial.
 

 The jury returned a verdict, finding that Beazer Homes did not breach any express or implied warranties. However, the jury found that Beazer Homes had been negligent and had negligently misrepresented material facts, and it returned a general damage verdict for the homeowners in the sum of $7,885,500. In addition, the jury found comparative negligence by the class, concluding that Beazer Homes was 93 percent negligent and the class was 7 percent negligent.
 

 The homeowners sought attorney fees pursuant to NRS 40.655, and Beazer Homes objected, claiming that the subject of attorney fees should have been presented to the jury and the district court should permit discovery on the calculation of the fees. Without any documented analysis, the district court awarded a 40 percent contingent fee totaling $2,033,406. Judgment was entered for 93 percent of the verdict or $7,333,515 plus attorney fees, homeowners’ costs and prejudgment interest. Beazer Homes appeals the final judgment, and the homeowners appeal the district court’s order denying their motion for new trial.
 

 DISCUSSION
 

 Class action certification
 

 As a threshold issue, Beazer Homes argues that class action certification of this matter was inappropriate under NRCP 23. We agree.
 

 
 *846
 
 This court reviews class action certification decisions under an abuse of discretion standard.
 
 [1]
 
 Class action suits are designed to allow representatives of a numerous class of similarly situated people to sue on behalf of that class in order to obtain a judgment that will bind all.
 
 [2]
 
 Thereby, class actions promote efficiency and justice in the legal system by reducing the possibilities that courts will be asked to adjudicate many separate suits arising from a single wrong and that individuals will be unable to obtain any redress for ‘ ‘wrongs otherwise irremediable because the individual claims are too small or the claimants too widely dispersed.’ ’
 
 [3]
 

 So that these goals are not thwarted, NRCP 23(a) and (b) specify the circumstances under which a case is appropriately designated and maintained as a class action. Under those subsections, “[i]t is the plaintiffs’ burden to prove that the case is appropriate for resolution as a class action.’ ’
 
 [4]
 
 Therefore, when deciding to certify a case to proceed as a class action, the district court must look to NRCP 23(a) and (b) in ‘ ‘pragmatically determining] ’ ’ whether the plaintiffs have shown that “it is better to proceed as a single action, [than as] many individual actionsf,] in order to redress a single fundamental wrong.”
 
 [5]
 

 NRCP 23(a) prerequisites
 

 Under NRCP 23(a), plaintiffs seeking to certify a case as a class action must establish four prerequisites. First, the “numerosity” prerequisite requires that the members of a proposed class be so numerous that separate joinder of each member is impracticable.
 
 [6]
 
 Second, the “commonality” prerequisite necessitates the existence of questions of law or fact common to each member of the class.
 
 [7]
 
 Third, the “typicality” prerequisite calls for a showing that the representative parties’ claims or defenses are typical of the class’s claims or defenses.
 
 [8]
 
 Finally, the “adequacy” prerequisite mandates
 
 *847
 
 that the representative parties be able to fairly and adequately protect and represent each class member’s interests.
 
 [9]
 
 Each prerequisite is described below.
 

 Numerosity
 

 Before a class action can be certified, it must be shown that the putative class has so many members that “joinder of all members is impracticable.”
 
 [10]
 
 Although courts agree that numerosity prerequisites mandate no minimum number of individual members,
 
 [11]
 
 a putative class of forty or more generally will be found “numerous.”
 
 [12]
 

 As pointed out by the Sixth Circuit Court of Appeals in the context of the analogous FRCP 23(a) numerosity prerequisite, however, impracticability of joinder cannot be speculatively based on merely the number of class members, but must be positively demonstrated in an “‘examination of the specific facts of each case.’ ”
 
 [13]
 
 Yet, as the Second Circuit Court of Appeals has stated, “Impracticable does not mean impossible.”
 
 [14]
 
 Thus, as that court has pointed out, in examining the circumstances under which impracticality is asserted, courts may consider “judicial economy arising from the avoidance of a multiplicity of actions, geographic dispersion of class members, financial resources of class members, the ability of claimants to institute individual suits, and requests for prospective injunctive relief which would involve future class members,” among any other relevant factors.
 
 [15]
 
 Under those considerations, the joinder of two hundred plaintiffs might not prove impracticable, when they live in geographical proximity with one another and are asserting claims for which, if proven, they may statutorily recover attorney fees.
 

 
 *848
 

 Commonality
 

 Under the “commonality” prerequisite, class action certification is proper only when “there are questions of law or fact common to the class.”
 
 [16]
 
 Questions are common to the class when their answers as to one class member hold true for all class members.
 
 [17]
 
 Commonality does not require that “all questions of law and fact must be identical, but that an issue of law or fact exists that inheres in the complaints of all the class members.”
 
 [18]
 
 Thus, this prerequisite may be satisfied by a single common question of law or fact.
 
 [19]
 

 Typicality
 

 “Typicality” demands that the claims or defenses of the representative parties be typical of those of the class.
 
 [20]
 
 Generally, the typicality prerequisite concentrates on the defendants’ actions, not on the plaintiffs’ conduct.
 
 [21]
 
 Thus, defenses that are unique to a representative party will rarely defeat this prerequisite, unless they ‘ ‘threaten to become the focus of the litigation.’ ’
 
 [22]
 

 The typicality prerequisite can be satisfied, then, by showing that “each class member’s claim arises from the same course of events and each class member makes similar legal arguments to
 
 *849
 
 prove the defendant’s liability.”
 
 [23]
 
 Thus, the representatives’ claims need not be identical, and class action certification will not be prevented by mere factual variations among class members’ underlying individual claims.
 
 [24]
 
 For instance, typicality of claims can result when each owner in a condominium complex “suffer[s] damage” by way of being assessed for repairs to leaky common area roofs, even though some of the individual unit owners have not otherwise suffered from leakage problems.
 
 [25]
 

 Adequacy
 

 A class action may proceed only when it is shown that the representative parties have the ability to “fairly and adequately protect the interests of the class.’ ’
 
 [26]
 
 As the United States Supreme Court has recognized, this inquiry “serves to uncover conflicts of interest between named parties and the class they seek to represent.”
 
 [27]
 
 In this context, that Court has generally required that class members “ ‘ “possess the same interest and suffer the same injury” ’ ” as other class members.
 
 [28]
 
 For example, representative parties of a single class of persons with varying asbestos-related injuries cannot adequately advance the interests of the entire class when the individual class members have disparate medical statuses and, therefore, conflicting views on how a limited amount of recovery should be divided, dispersed, and otherwise dealt with.
 
 [29]
 

 NRCP 23(b) requirements
 

 In addition to meeting the NRCP 23(a) prerequisites, plaintiffs seeking to maintain a class action must meet one of three conditions set forth in NRCP 23(b): (1) that separate litigation by individuals in the class would create a risk that the opposing party would be held to inconsistent standards of conduct or that nonparty members’ interests might be unfairly impacted by the other
 
 *850
 
 members’ individual litigation; (2) that the party opposing the class has acted or refused to act against the class in a manner making appropriate classwide injunctive or declaratory relief; or (3) that common questions of law or fact predominate over individual questions, and a class action is superior to other methods of adjudication.
 

 Of these three possible ways under NRCP 23(b) to show that a class action is “logistically possible and superior to other actions,”
 
 [30]
 
 the parties in this case focus only on the third condition. There are two prongs to the third condition under NRCP 23(b): predominance and superiority. Therefore, our discussion and subsequent analysis likewise focus on when common questions predominate over individual questions and the class action vehicle is a superior method for adjudication, thereby advancing the policy reasons behind allowing cases to proceed as class actions.
 
 [31]
 

 Predominance
 

 The predominance prong of the third condition ‘ ‘tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation.”
 
 [32]
 
 The “questions of law or fact” at issue in this analysis are those that “qualify each class member’s case as a genuine controversy;”
 
 [33]
 
 therefore, the questions that class members have in common must be significant to the substantive legal analysis of the members’ claims.
 
 [34]
 

 While the NRCP 23(b)(3) predominance inquiry is related to the NRCP 23(a) commonality and typicality requirements, it is more demanding.
 
 [35]
 
 The importance of common questions must predom-
 
 *851
 
 mate over the importance of questions peculiar to individual class members.
 
 [36]
 
 For example, common questions predominate over individual questions if they significantly and directly impact each class member’s effort to establish liability and entitlement to relief,
 
 [37]
 
 and their resolution “can be achieved through generalized proof.”
 
 [38]
 

 On the other hand, when the facts and the law necessary to resolve the claims vary from person to person,
 
 [39]
 
 taking into account the nature of the defenses presented, or when the resolution of the common questions would result in “superficial adjudications which . . . deprive either [party] of a fair trial,”
 
 [40]
 
 individual questions predominate so that class action is an inappropriate method of adjudication.
 
 [41]
 
 Ultimately, as the United States Supreme Court has pointed out, courts should exercise caution in allowing a class action to proceed when the “individual stakes are high and disparities among class members great.”
 
 [42]
 

 Superiority
 

 The second prong to the third NRCP 23(b) condition questions whether class action is the superior method for adjudicating the
 
 *852
 
 claims, thereby promoting the interests of “efficiency, consistency, and ensuring that class members actually obtain relief.’ ’
 
 [43]
 
 A proper class action prevents identical issues from being “litigated over and over[,] thus avoid[ing] duplicative proceedings and inconsistent results.”
 
 [44]
 
 It also helps class members obtain relief when they might be unable or unwilling to individually litigate an action for financial reasons or for fear of repercussion.
 
 [45]
 

 Other factors worth considering, however, include the members’ interests in individually controlling the litigation, whether and the extent to which other litigation of the matter by class members has already commenced, the desirability of litigating the class action in the particular forum, whether the class action will be manageable,
 
 [46]
 
 and the time and effort a district court must expend in becoming familiar with the case.
 
 [47]
 
 Further, the court must determine whether other adjudication methods would allow for efficient resolution without compromising any parties’ claims or defenses. For example, NRCP 16.1(f) permits district courts to waive pretrial discovery requirements for complex litigation; NRCP 19 allows for the joinder of necessary persons; and NRCP 42 governs the court’s powers to consolidate, order joint hearings, and conduct separate trials in actions involving common questions of law or fact, or in order to promote efficiency or preserve fairness.
 
 [48]
 
 Further, NRCP 23(c)(4) provides that the district court may certify a class action under that rule with respect to certain issues or subclasses. In any case, class action is only superior when management difficulties and any negative impacts on all parties’ interests “are outweighed by the benefits of classwide resolution of common issues.”
 
 [49]
 

 Finally, we note that NRS Chapter 40 governs actions involving constructional defects. While that chapter neither forbids nor sanctions proceeding with a class action in a constructional defect case,
 
 [50]
 
 it does impact the NRCP 23(b) analysis. Thus, in address
 
 *853
 
 ing whether class action is the superior method, the court should also consider the parties’ ability to comply with NRS Chapter 40’s requirements concerning constructional defects if class action certification is granted.
 

 For instance, under NRS Chapter 40, before commencing an action, claimants must generally give detailed notice to the contractor of “the defects or any damages or injuries to each residence or appurtenance,” and any known causes, involved in the claim.
 
 [51]
 
 The contractor is required to respond, in writing, to each notice of an alleged constructional defect.
 
 [52]
 
 Under the statutes, the parties have continuing responsibilities, including the duty to provide notice to prospective purchasers of houses that are, or have been, the subject of a constructional defect claim.
 
 [53]
 
 Finally, under this chapter, settlement is encouraged,
 
 [54]
 
 but if an action is commenced, a claimant is permitted to recover certain damages that were proximately caused by a constructional defect, including any reasonable attorney fees.
 
 [55]
 

 These NRS Chapter 40 provisions reveal that the Legislature intended to provide contractors with an opportunity to repair defects in homes,
 
 [56]
 
 a goal that should not be inhibited by class action cer
 
 *854
 
 tification. Thus, when class actions make detailed notice of all defects impractical or would tend to deprive a contractor of the opportunity to repair the defects, instead forcing it into a class damages settlement or trial, the class action method of adjudication is not superior to individual actions.
 
 [57]
 
 Further, class action treatment would not be superior if it is likely to force homeowners who do not suffer from home defects to disclose defect litigation to prospective buyers. Finally, as recognized by a federal district court, “[w]here a statute provides attorney’s fees to a prevailing plaintiff!,] there is less incentive to protect by class certification individuals with small claims.”
 
 [58]
 
 Consequently, class actions may not be suitable for many constructional defect cases, given the manner in which the NRS Chapter 40 statutory framework provides for dispute resolutions.
 

 Class actions in constructional defects cases, generally
 

 And as a practical matter, single-family residence constructional defect cases will rarely be appropriate for class action treatment. As pointed out by the California Supreme Court, class actions involving real property are often “incompatible with the fundamental maxim that each parcel of land is unique.’ ’
 
 [59]
 
 Although, as that court recognized, the uniqueness-of-land principle was developed at common law in response to concerns that did not involve class action issues,
 
 [60]
 
 the rule “take[s] on added significance in this modern era of development. Simply stated, there are now more characteristics and criteria by which each piece of land differs from
 
 *855
 
 every other.”
 
 [61]
 
 Allowing class actions to proceed on issues, especially those of liability, that involve variables particular to “unique” parcels of land would require either an alteration of this principle or an extensive subclassification system that would effectively defeat the purpose of the class action altogether.
 
 [62]
 
 Like the California court, we recognize that, where specific characteristics of different land parcels are concerned, “these uniqueness factors weigh heavily in favor of requiring independent litigation of the liability to each parcel and its owner.”
 
 [63]
 

 Further, even when the uniqueness of the real property is not substantially implicated, constructional defect cases relating to several different properties are often very complex, involving allegations between numerous primary parties and third parties concerning different levels or types of property damages. In many instances, these types of cases present issues of causation, liability defenses, and damages that cannot be determined or presumed through the use of generalized proof, but rather require each party to individually substantiate his or her claims.
 
 [64]
 

 For example, a federal district court has recognized that, in addition to individualized issues of fault, any recovery in such cases often “implicate^] myriad ‘house specific’ issues, including . . . the type of repair needed on each house, local building code requirements, the costs of materials needed for the repairs, and labor rates.”
 
 [65]
 
 Similarly, the California Court of Appeal has recognized that tort causes of action in a constructional defect case were at variance with class action purposes because, to recover, “the elements of liability and causation [could] not be established without individualized proof as to each of the purported . . . class members,” making a class action unmanageable.
 
 [66]
 

 
 *856
 
 Thus, when constructional defect issues like causation and impact are widely disparate and cannot be established by generalized proof, individual trials on those issues are necessary. Further, although the need for individualized proof regarding damages determinations, such as when they cannot be made by “ ‘mathematical or formula computations,’ ” will not generally by itself defeat class action certification,
 
 [67]
 
 it may nevertheless make proceeding with a class action unmanageable.
 
 [68]
 
 As recognized by the Fifth Circuit, “if the effect of class certification is to bring in thousands of possible claimants whose presence will in actuality require a multitude of mini-trials (a procedure which will be tremendously time consuming and costly), then the justification for class certification is absent.’ ’
 
 [69]
 
 For these reasons, courts in other jurisdictions are seldom able to conclude that common questions predominate over individual questions and that any remaining individual questions would be manageable, and so they have consistently refused to certify class actions premised on constructional defects in single-family homes.
 
 [70]
 

 This is not to suggest, however, that class action suits involving NRS Chapter 40-governed constructional defects are never appropriate. While we recognize the difficulty in managing most constructional defect cases given their size and complexity, class action may be appropriate in some constructional defect cases.
 

 
 *857
 
 Class action treatment may be proper under NRCP 23, for instance, if the constructional defect case or issue involves a singular defect that predominates over any other problems, which remain minimal.
 

 In a California case,
 
 Hicks v. Kaufman & Broad Home Corp.,
 

 [71]
 

 the claimants were allowed to proceed with a class action on issues regarding breach of warranty, since the alleged defect consisted of the improper use of a certain material in each house’s concrete slab. With regard to their breach of warranty claims, the parties merely requested economic damages for the defective items’ repair or replacement; thus the claims could be resolved with generalized proof and simple damages formulas.
 

 On the other hand, the plaintiffs in that case were not permitted to proceed with their negligence claims arising from the same defect because, for those claims, each class member would be required to specifically prove damages, and thus “the individual factual questions as to causation and damages would make a class action unmanageable.”
 
 [72]
 
 Likewise, we recognize that, while constructional defect cases will more often than not be inappropriate for class action treatment, some constructional defects matters might be amenable to class action certification. Hence the need for a thorough and documented NRCP 23 analysis is especially strong in complex constructional defects cases.
 
 [73]
 

 Conditional certification
 

 But even if consideration of the NRCP 23 qualifiers initially indicates that class action certification is appropriate, after the parties’ claims and defenses are sufficiently identified, the court might need to re-determine whether the matter still meets the statute’s prerequisites and conditions. NRCP 23(c)(1) allows a district court to grant class action certification on a conditional basis. Conditional certification notifies the parties that a court may exercise its discretion to later revoke certification in complex litigation cases.
 
 [74]
 
 Thus, in cases that appear complex, a district court should grant conditional class action certification, if appropriate, and then reevaluate the certification in light of any problems that appear post-discovery or later in the proceedings.
 
 [75]
 
 If a class certification
 
 *858
 
 becomes problematic, the district court must reevaluate class action certification under NRCP 23.
 

 The homeowners’ class action certification
 

 In this case, the district court abused its discretion in several instances relating to the class certification. First, it certified the matter to proceed as a class action based on the homeowners’ assertions regarding the existence of a common expansive soils issue without conducting and documenting a thorough NRCP 23 analysis. As became clear at trial and by the jury’s verdict, individualized proof of the cause and defenses to the expansive soils claim was necessary. Second, the court allowed, again without making any NRCP 23 analysis, claims regarding other alleged defects to proceed with class action status, even though the certification applied only to the expansive soils issue. Finally, the court failed to adequately revisit the certification issue by documenting a thorough NRCP 23 analysis, even when it became apparent that class action treatment was problematic and Beazer Homes requested the court to decertify the class.
 

 If the court had followed proper procedure in this case, considering the particularities of the parties’ claims and defenses, it would have discovered that class action treatment was inappropriate. As Beazer Homes points out, the homeowners’ claims and Beazer Homes’ defenses together defeated, at least, the predominance and superiority requirement of NRCP 23(b).
 
 [76]
 

 NRCP 23(b)(3) predominance
 

 The homeowners’ claims fail to satisfy the predominance prong of NRCP 23(b)(3) because the individual questions of cause and effect are more important than any common questions of exposure, and they cannot be resolved with generalized proof. As the United States Supreme Court has explained, a shared experience alone does not justify a class action.
 
 [77]
 
 Instead, it must be adequately demonstrated that this exposure was similar, and caused similar effects, within the class.
 

 With regard to the alleged constructional defects for which the class was certified, the homeowners asserted that all of the houses suffered from exposure to improper design and soil preparation in light of the nature of the soils on which they were built. But they admit that the houses were constructed in different phases, under
 
 *859
 
 different plans, and with at least two separate slab designs, and they did not show that each of the houses suffered from the same design or constructional flaw or were affected by the expanding soils in the same way. Further, the record contains evidence indicating that the houses’ underlying soils required different levels or types of preparation.
 

 Moreover, the homeowners introduced evidence of several different types of property damage, based on inspections of only some of the houses. Even among the inspected houses, however, the damages differed. Thus, no reasonable basis exists on which to extrapolate to all of the houses the property damage, and causes therefor, pertaining to the inspected houses. Such evidence does not represent property damage suffered by the individual homeowners, and its extrapolation to each house is unfair to both Beazer Homes and any homeowner who suffered additional harm. Instead, individualized proof as to the alleged defects, including the impact of the shifting soils, should have been offered as to each house. Due to the varying property damage caused by the houses’ differing defects, the damages calculation would not fit into a simple equation, but rather would also require additional, separate litigation.
 

 In addition, in response to the homeowners’ claims, Beazer Homes asserted a comparative negligence defense, which created additional questions requiring individualized proof. By its nature, the defense requires a comparison between the conduct of the defendant and each plaintiff, which cannot be made by allotting a single percentage of negligence to the entire class, when each homeowner may have acted differently and contributed more or less than other homeowners to each house’s damages.
 

 Although the homeowners assert that the defense was improper, since any negligent acts by the homeowners necessarily occurred after Beazer Homes built the homes, and therefore should be considered under mitigation of damages and not comparative negligence, both theories raise questions requiring individualized proof. Moreover, the homeowners are incorrect.
 

 Comparative negligence applies only to conduct that proximately contributes to an injury’s causation, and not to subsequent acts that merely aggravate the injury or its consequences.
 
 [78]
 
 Thus, “[t]he plaintiff’s negligence is a legally contributing cause of his harm if, but only if, it is a substantial factor in bringing about his harm.”
 
 [79]
 
 On the other hand, mitigation issues exist when the wrongdoer attempts to minimize the damages owed by showing that the harmed
 
 *860
 
 person failed to take reasonable care to avoid incurring additional damages.
 
 [80]
 

 As a result, comparative negligence does not apply when the defect is present from the time of construction. When there is an argument that no “defect”
 
 [81]
 
 is present at that time, but that the homeowners’ actions contributed to then-existing conditions so that the defect afterward appeared, a comparative negligence defense is proper.
 
 [82]
 
 Here, Beazer Homes asserted that various actions of individual homeowners caused some of the defects to appear. For instance, it alleged, some of the homeowners changed drainage systems or over-watered, so that soils that would not have shifted in a harmful way under normal wet conditions did so only with the homeowners’ introduction of additional water. Accordingly, this defense also raised questions that could only be answered with resort to proof of each individual homeowner’s actions.
 

 As a result of these individual questions, even if the homeowners’ claims share some particular aspects, the importance of those common questions is overcome by the fact that, even after those questions related to the shared aspects are resolved, substantial questions requiring individualized proof regarding each homeowner’s right to recover predominate. Thus, the homeowners failed to show that common questions predominate under NRCP 23(b)(3).
 

 NRCP 23(b) superiority
 

 Regarding the second prong of NRCP 23(b), superiority, important variances in class members’ individual interests were overshad
 
 *861
 
 owed in the resolution of the common claims, so that the disposition of the individual questions inevitably led to inefficiency, unfair results, and overall unmanageability. In fact, the district court admitted that proceeding with a class action in constructional defect cases like this one was awkward and even stated that it would not proceed in the same manner in the future. While we recognize that the court was trying to preserve months of work and expenditures, it should have considered whether other methods of proceeding, such as through the joinder of parties, would have been more appropriate. Because the homeowners did not adequately show that class action was a superior method for adjudicating this matter, the district court should not have allowed the case to proceed in that manner.
 

 Allowing this case to proceed as a class action, at least in its entirety and without documenting a thorough NRCP 23 analysis, was improper under NRCP 23(b)(3). Although we reverse the district court’s judgment and remand for a new trial based on the improper certification alone,
 
 [83]
 
 we take this opportunity to discuss other issues that are important to our constructional defect jurisprudence.
 

 Attorney fees
 

 In constructional defects cases, claimants may recover attorney fees as an item of damages under NRS 40.655(l)(a). Generally, Beazer Homes points out, quantities of damages are determined by the jury. Therefore, it asserts, claimants who fail to submit the attorney fees issue to the jury, and instead simply request fees in a post-trial motion, waive their right to those fees. The homeowners concede that issues of damages are generally presented to the jury,
 
 [84]
 
 but they argue that the statute nevertheless refers to court-determined attorney fees.
 

 NRS 40.655(l)(a) provides in part that a “claimant may recover only the following damages to the extent proximately caused by a constructional defect: [a]ny reasonable attorney’s fees.” That subsection then lists, as other items of damages, the reasonable cost of past and future repairs, and temporary housing, any reduction in market value, loss of use, other property damage, certain additional
 
 *862
 
 costs to the claimant, and statutory interest.
 
 [85]
 
 Subsection 2 of that statute, however, again addresses the attorney fees issue, providing that “[t]he amount of any attorney’s fees awarded pursuant to this section must be approved by the court.”
 

 Nothing in NRS 40.655 indicates that the amount of attorney fees recoverable by prevailing claimants must be decided by the jury.
 
 [86]
 
 In
 
 Sandy Valley Associates v. Sky Ranch
 
 Estates,
 
 [87]
 
 after pointing out that attorney fees as “a cost of litigation” are recoverable only under an agreement, statute, or rule, we stated that “[i]f the fees are [so] authorized, the trial court examines the reasonableness of the fees requested and the amount of any award.”
 
 [88]
 
 Ordinarily, we noted, the court’s determination is based on the documentary evidence submitted to it in a post-judgment motion.
 
 [89]
 
 Then, we distinguished litigation cost attorney fees from those fees requested as an element of damages, which constitute a rather narrow exception to the rule prohibiting attorney fees awards absent express authorization, and consequently must be specially pleaded and proved “just as any other element of damages.”
 
 [90]
 

 Although a party may recover attorney fees “as damages” in constructional defects cases, these fees do not fall under the narrow exception to the rule but rather are expressly authorized by statute and are intended to compensate the claimant for legal fees incurred when he or she is forced to institute a court action to resolve a valid constructional defect claim by shifting the fees to the defendant.
 
 [91]
 
 Unlike attorney fees awarded under the narrow special damages exception discussed in
 
 Sandy Valley,
 
 which claimants
 
 *863
 
 generally have the arduous task of proving were a “natural and proximate consequence of the injurious conduct,” NRS 40.655(l)(a) allows fees to be recovered “to the extent proximately caused by a constructional defect.’
 
 [92]
 
 Thus, any time that a case is tried by legal counsel and a jury determines that the claimant is entitled to recover damages proximately caused by a constructional defect, a court can presume that the claimant is entitled to the recovery of attorney fees, whether or not the jury verdict explicitly so states.
 
 [93]
 

 With liability presumed, all that remains is the equitable calculation of the fees, a matter traditionally reserved to the court.
 
 [94]
 
 Further, NRS 40.655(2) specifically provides that the amount of fees
 
 *864
 
 recovered under that section “must be approved by the court.” Consequently, we take the plain language of this subsection to expressly require the court to determine the reasonableness of the requested fees.
 
 [95]
 
 Thus, with respect to the amount of an award, we agree with the Second Circuit Court of Appeals that “[i]t is the trial court, not the jury, that has the responsibility of determining attorney’s fees awards pursuant to statute.”
 
 [96]
 

 In Nevada, “the method upon which a reasonable fee is determined is subject to the discretion of the court,” which “is tempered only by reason and fairness.”
 
 [97]
 
 Accordingly, in determining the amount of fees to award, the court is not limited to one specific approach; its analysis may begin with any method rationally designed to calculate a reasonable amount, including those based on a “lodestar” amount
 
 [98]
 
 or a contingency fee.
 
 [99]
 
 We emphasize that,
 
 *865
 
 whichever method is chosen as a starting point, however, the court must continue its analysis by considering the requested amount in light of the factors enumerated by this court in
 
 Brunzell v. Golden Gate National
 
 Bank,
 
 [100]
 
 namely, the advocate’s professional qualities, the nature of the litigation, the work performed, and the result. In this manner, whichever method the court ultimately uses, the result will prove reasonable as long as the court provides sufficient reasoning and findings in support of its ultimate determination.
 
 [101]
 

 Prejudgment interest
 

 Beazer Homes argues that prejudgment interest cannot be awarded on an entire general verdict when that verdict encompasses both past and future damages.
 

 Under NRS 17.130(2), “the judgment draws interest from the time of service of the summons and complaint until satisfied, except for any amount representing future damages.” Prejudgment interest may not be awarded on an entire verdict “when it is impossible to determine what part of the verdict represented past damages.”
 
 [102]
 
 For example, when a general verdict form does not distinguish between past and present damages, a trial court cannot award prejudgment interest.
 
 [103]
 
 However, when nothing in the record suggests that future damages were included in the award, prejudgment interest is proper.
 
 [104]
 

 
 *866
 
 Here, we conclude that prejudgment interest was properly awarded on the entire verdict, as the award represented only past damages, because the damages occurred when the homes were built, regardless of when the homeowners actually made or will make necessary repairs. Likewise, unexpended costs to repair constructional defects, which necessarily occurred early on, should be treated as past damages, even though the defects will be repaired in the future. Thus, prejudgment interest should be applied to those past “abatement” damages.
 

 The Supreme Judicial Court of Massachusetts reached a similar conclusion when it considered an argument that prejudgment interest should apply only to that portion of damages that represented the incurred costs for asbestos removal but not the costs of abatement projects that had yet to be undertaken.
 
 [105]
 
 In awarding prejudgment interest on the entire verdict, that court concluded that the property damage occurred when asbestos-containing products were installed in the buildings, and that any costs to remove or repair those products constituted past damages, regardless of when they actually were awarded.
 
 [106]
 
 As the Massachusetts court reasoned, “abatement costs are not ‘future damages,’ but are rather an estimation of damage that has already occurred, for which compensation is already due.”
 
 [107]
 

 CONCLUSION
 

 When single-family residence constructional defect cases present substantial issues requiring individualized determinations, they are not appropriate for class action treatment. Because the homeowners’ claims and Beazer Home’s defenses presented just such issues in this instance, and because the district court failed to conduct and document a thorough class action certification analysis under NRCP 23, we conclude that the district court abused its discretion in allowing the homeowners’ case to proceed as a class action. Accordingly, we reverse the district court’s judgment, and we remand this matter for a new trial on all issues consistent with this opinion.
 

 Becker, C. J., Rose, Maupin, Gibbons, Douglas and Parraguirre, JJ., concur.
 

 [1]
 

 See Meyer v. District Court,
 
 110 Nev. 1357, 1363, 885 P.2d 622, 626 (1994).
 

 [2]
 

 See Johnson
 
 v.
 
 Travelers Insurance Co.,
 
 89 Nev. 467, 471, 515 P.2d 68, 71 (1973).
 

 [3]
 

 Id.
 
 at 470-71, 515 P.2d at 71.
 

 [4]
 

 Cummings
 
 v.
 
 Charter Hospital,
 
 111 Nev. 639, 643, 896 P.2d 1137, 1140 (1995).
 

 [5]
 

 Deal
 
 v.
 
 999 Lakeshore Association,
 
 94 Nev. 301, 306, 579 P.2d 775, 778-79 (1978).
 

 [6]
 

 NRCP 23(a)(1).
 

 [7]
 

 NRCP 23(a)(2).
 

 [8]
 

 NRCP 23(a)(3).
 

 [9]
 

 NRCP 23(a)(4).
 

 [10]
 

 NRCP 23(a)(1).
 

 [11]
 

 See, e.g., Golden
 
 v.
 
 City of Columbus,
 
 404 F.3d 950, 965 (6th Cir. 2005);
 
 Stewart
 
 v.
 
 Abraham,
 
 275 F.3d 220, 226-27 (3d Cir. 2001).
 

 [12]
 

 Monaco
 
 v.
 
 Stone,
 
 187 F.R.D. 50, 61 (E.D.N.Y. 1999);
 
 see also Cummings,
 
 111 Nev. 639, 896 P.2d 1137 (concluding that a class of three or four plaintiffs is insufficiently numerous to justify certification as a class action);
 
 cf. Kane
 
 v.
 
 Sierra Lincoln-Mercury, Inc.,
 
 91 Nev. 178, 533 P.2d 464 (1975) (involving an instance where eighty-five dissimilarly situated plaintiffs were joined in an action).
 

 [13]
 

 Golden,
 
 404 F.3d at 965-66 (quoting
 
 General Telephone Co. v. EEOC,
 
 446 U.S. 318, 330 (1980));
 
 see also Robidoux v. Celani,
 
 987 F.2d 931, 936 (2d Cir. 1993).
 

 [14]
 

 Robidoux,
 
 987 F.2d at 935.
 

 [15]
 

 Id.
 
 at 936.
 

 [16]
 

 NRCP 23(a)(2).
 

 [17]
 

 Spera
 
 v.
 
 Fleming, Hovenkamp & Grayson, P.C.,
 
 4 S.W.3d 805, 810 (Tex. App. 1999) (interpreting the analogous Texas provision, Tex. Rule Civ. Pro. 42(a)(2)).
 

 [18]
 

 Id.
 
 at 811.
 

 [19]
 

 Monaco,
 
 187 F.R.D. at 61.
 

 [20]
 

 NRCP 23(a)(3).
 

 [21]
 

 See, e.g., Wagner v. Nutrasweet Co.,
 
 95 F.3d 527, 534 (7th Cir. 1996) (“Typicality under [FRCP] 23(a)(3) should be determined with reference to the [defendant’s] actions, not with respect to particularized defenses it might have against certain class members.”);
 
 Forman
 
 v.
 
 Data Transfer, Inc.,
 
 164 F.R.D. 400, 404 (E.D. Pa. 1995) (“When inquiring into the typicality requirement under [FRCP] 23(a)(3), the focus must be on the defendants’ behavior and not that of the plaintiffs.”).
 

 [22]
 

 Gary Plastic Packaging v. Merrill Lynch,
 
 903 F.2d 176, 180 (2d Cir. 1990);
 
 see also Carbajal
 
 v.
 
 Capital One,
 
 219 F.R.D. 437, 440 (N.D. Ill. 2004) (“The claims of a proposed class representative are considered atypical if the representative is subject to a unique defense that is reasonably likely to be a major focus of the litigation. . . . [I]f the class representative is likely to be preoccupied with a unique defense, his claims are atypical.” (citations omitted));
 
 Trief v. Dun & Bradstreet Corp.,
 
 144 F.R.D. 193, 200-01 (S.D.N.Y. 1992) (“[I]t is beyond reasonable dispute that a representative may satisfy the typicality requirement even though that party may later be barred from recovery by a defense particular to him that would not impact other class members.”).
 

 [23]
 

 Robidoux,
 
 987 F.2d at 936.
 

 [24]
 

 Id.
 
 at 936-37;
 
 see also In re Sumitomo Copper Litigation,
 
 182 F.R.D. 85, 94 (S.D.N.Y. 1998).
 

 [25]
 

 Deal,
 
 94 Nev. at 306, 579 P.2d at 778.
 

 [26]
 

 NRCP 23(a)(4).
 

 [27]
 

 Amchem Products, Inc. v. Windsor,
 
 521 U.S. 591, 625 (1997).
 

 [28]
 

 Id.
 
 at 625-26 (quoting
 
 East Texas Motor Freight v. Rodriguez,
 
 431 U.S. 395, 403 (1977) (quoting
 
 Schlesinger v. Reservists to Stop the War,
 
 418 U.S. 208, 216 (1974))).
 

 [29]
 

 Id.
 
 at 626-27;
 
 see also City of San Jose
 
 v.
 
 Superior Ct. of Santa Clara Cty.,
 
 525 P.2d 701, 712-13 (Cal. 1974) (concluding that, under a similar California class action requirement, the representative parties would inadequately represent the putative class because their request for only one aspect of possible recovery on their claim would effectively preclude other members from later requesting other reasonably expected recovery related to that claim).
 

 [30]
 

 Meyer, 110 Nev. at 1363, 885 P.2d at 626.
 

 [31]
 

 See
 
 State of Ala. v. Blue Bird Body Co., Inc.,
 
 573 F.2d 309, 315-16 (5th Cir. 1978) (reminding district courts to “be mindful of the policy underlying Rule 23” when making analogous FRCP 23(b)(3) certification determinations and explaining that “a (b)(3) action ‘encompasses those cases in which a class action would achieve economies of time, effort, and expense, and promote uniformity of decisions as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results’ ” (quoting FRCP 23 advisory committee note (1966))).
 

 [32]
 

 Amchem Products,
 
 521 U.S. at 623.
 

 [33]
 

 Id.
 

 [34]
 

 See Blue Bird Body Co.,
 
 573 F.2d at 316 (“In order to make the findings required to certify a class action under [FRCP] 23(b)(3) . . . , one must initially identify the substantive law issues which will control the outcome of the litigation.”);
 
 Ingram v. The Coca-Cola Co.,
 
 200 F.R.D. 685, 700 (N.D. Ga. 2001).
 

 [35]
 

 Amchem Products,
 
 521 U.S. at 623-24.
 

 [36]
 

 Id.
 
 at 624;
 
 Ingram,
 
 200 F.R.D. at 700 (recognizing that “ ‘[w]hether an issue predominates can only be determined after considering what value resolution of the class-wide issue will have in each class member’s underlying cause of action’ ” (quoting
 
 Rutstein v. Avis Rent-A-Car Systems, Inc.,
 
 211 F.3d 1228, 1234 (11th Cir. 2000))).
 

 [37]
 

 Ingram,
 
 200 F.R.D. at 700;
 
 see also Moore v. PaineWebber, Inc.,
 
 306 F.3d 1247, 1252 (2d Cir. 2002).
 

 [38]
 

 PaineWebber,
 
 306 F.3d at 1252.
 

 [39]
 

 See Amchem Products,
 
 521 U.S. at 624 (noting that claims requiring the separate application of different states’ laws to substantially varying factual situations defeats the importance of any common questions);
 
 see also PaineWebber,
 
 306 F.3d at 1252 (noting that classwide issues do not predominate if issues requiring “individualized proof” are more substantial);
 
 Southwestern Refining Co., Inc.
 
 v.
 
 Bernal,
 
 22 S.W.3d 425, 434 (Tex. 2000) (“The predominance requirement is intended to prevent class action litigation when the sheer complexity and diversity of the individual issues would overwhelm or confuse a jury or severely compromise a party’s ability to present viable claims or defenses.”).
 

 [40]
 

 City of San Jose,
 
 525 P.2d at 711.
 

 [41]
 

 See, e.g., Hicks
 
 v.
 
 Kaufman & Broad Home Corp.,
 
 107 Cal. Rptr. 2d 761, 773 (Ct. App. 2001) (concluding that even though questions of defective material were common to the putative class, the individual factual questions as to causation and damages predominated so as to make class action litigation unworkable).
 

 [42]
 

 Amchem Products,
 
 521 U.S. at 625 (citing 28 U.S.C. App. 697 advisory committee note (1966)).
 

 [43]
 

 Ingram,
 
 200 F.R.D. at 701.
 

 [44]
 

 Id.
 

 [45]
 

 Id.
 

 [46]
 

 Id.
 

 [47]
 

 Peltier Enterprises, Inc. v. Hilton,
 
 51 S.W.3d 616, 625 (Tex. App. 2000).
 

 [48]
 

 See also
 
 FRCP 23 advisory committee note (1966) (noting that “one or more actions agreed to by the parties as test or model actions may be preferable to a class action,” or the court may be able to make arrangements so as to avoid duplicative discovery).
 

 [49]
 

 Peltier Enterprises,
 
 51 S.W.3d at 624.
 

 [50]
 

 E.g.,
 
 NRS 40.6452(5) (“This subsection [regarding common constructional defects within a single development] does not establish or prohibit the right to maintain a class action.”).
 

 [51]
 

 NRS 40.645(2)(b), (c). NRS Chapter 40 was substantially revised in 2003.
 
 See
 
 2003 Nev. Stat., ch. 362, at 2034-50. Thus, at the time the homeowners’ complaint was filed in this matter, the NRS Chapter 40 prerequisites to maintaining a constructional defect claim were slightly different. Nonetheless, the former provisions contained notice and response prerequisites, and continuing duties, that were pertinent to determining whether class action treatment was appropriate under NRCP 23(b).
 
 See, e.g.,
 
 NRS 40.682 (repealed 2003) (requiring, generally, claimants to give detailed notice to the contractor, before commencing an action on a claim, of “the defects and any damages or injuries to each residence” involved in the claim); NRS 40.682(10) (repealed 2003) (requiring the contractor to describe the cause of the defect, if known, the nature and extent of the damage of the injury, and the method and adequacy of any estimated cost of repairs); NRS 40.682(4) (repealed 2003) (requiring the parties to meet to discuss joinder of parties and claims).
 

 [52]
 

 See
 
 NRS 40.6452; NRS 40.6472.
 

 [53]
 

 See
 
 NRS 40.688;
 
 see also
 
 NRS 40.6452 (governing actions concerning common constructional defects within a single development); NRS 40.646 (governing responsibilities for defects allegedly caused or contributed to by subcontractors, suppliers, or design professionals); NRS 40.6472(4) (detailing when it is appropriate to add additional causes of action to a case).
 

 [54]
 

 See, e.g.,
 
 NRS 40.650; NRS 40.665.
 

 [55]
 

 NRS 40.655(1).
 

 [56]
 

 See Bruce v. Jim Walters Homes, Inc.,
 
 943 S.W.2d 121, 123 (Tex. App. 1997) (“The [analogous Texas law: Residential Construction Liability Act] was enacted to promote settlement between homeowners and contractors and to afford contractors the opportunity to repair their work in the face of dissatisfaction.”); Hearing on S.B. 395 Before the Assembly Judiciary Comm., 68th
 
 *854
 
 Leg. (Nev., June 23, 1995) (recognizing that Nevada’s constructional defects law, codified in NRS Chapter 40, is modeled on Texas law); Hearing on S.B. 241 Before the Senate Commerce and Labor Comm., 72d Leg. (Nev., March 19, 2003) (discussing the 2003 amendments to NRS Chapter 40, designed to promote the repair of constructional defects issues without court action).
 

 [57]
 

 Compare, for instance, NRS 40.6452’s instruction regarding common constructional defects, permitting claimants to “opt-in” to a notice by requesting an inspection of the alleged defect, with NRCP 23(c)’s terms allowing a putative class member to “opt-out” of a class action.
 

 [58]
 

 Maguire
 
 v.
 
 Sandy Mac, Inc.,
 
 145 F.R.D. 50, 53 (D.N.J. 1992).
 

 [59]
 

 City of San Jose
 
 v.
 
 Superior Ct. of Santa Clara Cty.,
 
 525 P.2d 701, 711 (Cal. 1974).
 

 [60]
 

 See, e.g., Stoltz v. Grimm,
 
 100 Nev. 529, 533, 689 P.2d 927, 930 (1984) (affirming an award of specific performance because “the subject matter of the contract was real property, and as such is unique”);
 
 Locken
 
 v.
 
 Locken,
 
 98 Nev. 369, 372, 650 P.2d 803, 805 (1982) (affirming the imposition of a constructive trust to remedy the wrongful holding of title to real property, “since land is unique”).
 

 [61]
 

 City of San Jose,
 
 525 P.2d at 711,
 

 [62]
 

 See id.
 
 at 711-12 (recognizing that class action treatment might be appropriate despite the need to individually determine damages, but “[o]nly in an extraordinary situation would a class action be justified where, subsequent to the class judgment, the members would be required to individually prove not only damages but also liability”).
 

 [63]
 

 Id.
 
 at 711.
 

 [64]
 

 See, e.g., Muise v. GPU, Inc.,
 
 851 A.2d 799, 813-23 (N.J. Super. Ct. App. Div. 2004) (discussing and distinguishing when class actions might be appropriate despite the need for individualized proof, such as when there exist predominating common questions of liability and “the fact of damage”).
 

 [65]
 

 In re Stucco Litigation,
 
 175 F.R.D. 210, 215 (E.D.N.C. 1997) (footnote omitted) (analyzing a request to certify a nationwide class of homeowners).
 

 [66]
 

 Hicks v. Kaufman & Broad Home Corp.,
 
 107 Cal. Rptr. 2d 761, 764, 773 (Ct. App. 2001) (recognizing that “each class member would have to come forward and prove specific damage to her home” and the cause of that damage).
 

 [67]
 

 Blue Bird Body Co.,
 
 573 F.2d at 329 (quoting
 
 Windham v. American Brands, Inc.,
 
 565 F.2d 59, 68 (4th Cir. 1977));
 
 see also Johnson
 
 v.
 
 Travelers Insurance Co.,
 
 89 Nev. 467, 473-74, 515 P.2d 68, 72-73 (1973) (“[T]he more recent cases appear to hold that the existence of separate issues concerning the damages sustained to hold that the existence of separate issues concerning the damages sustained by various class members do[es] not prevent a common issue of liability from being adjudicated on a class basis. The matter of individual damages may be postponed to a later date, and a master appointed.” (citations omitted)).
 

 [68]
 

 Blue Bird Body Co.,
 
 573 F.2d at 326-29.
 

 [69]
 

 Id.
 
 at 328.
 

 [70]
 

 See, e.g., Hicks,
 
 107 Cal. Rptr. 2d 761;
 
 Simeon
 
 v.
 
 Colley Homes Inc.,
 
 818 So. 2d 125 (La. Ct. App. 2001) (concluding that since the case involved, concerning houses constructed by different sets of contractors nationwide who applied different allegedly defective installations of synthetic stucco, presented predominate individual issues of causation, third-party fault, and compensation, it was not amenable to class action certification);
 
 see also Basurco v. 21st Century Ins. Co.,
 
 133 Cal. Rptr. 2d 367, 373 (Ct. App. 2003) (affirming the denial of class action status in cases involving earthquake damages because the existence, cause, and extent of property damages and any recovery would necessarily have to be determined “on a case-by-case basis”);
 
 Brown
 
 v.
 
 New Orleans Public Service, Inc.,
 
 506 So. 2d 621 (La. Ct. App. 1987) (reversing class action certification in a utilities power interruption case because, while there existed a common claim of alleged negligence, the individual questions and proofs concerning causation, comparative negligence, and damages predominated).
 

 [71]
 

 107 Cal. Rptr. 2d 761 (Ct. App. 2001) (analyzing a request for class action certification in a constructional defect case under California law).
 

 [72]
 

 Id.
 
 at 775.
 

 [73]
 

 See In re Stucco Litigation,
 
 175 F.R.D. 210, 212 (E.D.N.C. 1997) (“The court must conduct a ‘rigorous analysis’ of the [analogous FRCP] 23 prerequisites.” (quoting
 
 General Tel. Co.
 
 v.
 
 Falcon,
 
 457 U.S. 147, 161 (1982)).
 

 [74]
 

 Ex
 
 Parte AmSouth Bancorporation, 717
 
 So. 2d 357, 366 (Ala. 1998).
 

 [75]
 

 See Bywaters
 
 v.
 
 U.S.,
 
 196 F.R.D. 458, 465 (E.D. Tex. 2000).
 

 [76]
 

 While it appears doubtful that the homeowners could have satisfied all of the NRCP 23(a) prerequisites, in light of our conclusion that the class action certification was improper under NRCP 23(b)(3), those requirements are not further discussed.
 

 [77]
 

 See
 
 Amchem Products,
 
 521 U.S. at 623-24.
 

 [78]
 

 See generally
 
 65 C.J.S.
 
 Negligence
 
 § 245 (2000).
 

 [79]
 

 Restatement (Second) of Torts § 465(1) (1965).
 

 [80]
 

 See Automatic Merchandisers, Inc. v. Ward,
 
 98 Nev. 282, 284, 646 P.2d 553, 554 (1982); Restatement (Second) of Torts § 918, cmt. a (1979) (distinguishing between the reduction of damages for contributory negligence and avoidable consequences).
 

 [81]
 

 See
 
 NRS 40.615 (defining “constructional defect”).
 

 [82]
 

 We note that when both comparative negligence and mitigation theories are presented to the jury, the instructions should be clear so as to avoid an improper double reduction of damages for the same action.
 
 See Cox
 
 v.
 
 Lesko,
 
 953 P.2d 1033, 1038 (Kan. 1998) (approving of a mitigation instruction that cautioned the jury not to include omissions by the plaintiff that the jury found to be comparative fault);
 
 Walter
 
 v.
 
 Wal-Mart Stores, Inc.,
 
 748 A.2d 961, 971 (Me. 2000) (concluding that “a defendant is not entitled to a double reduction of damages; that is, the same action or inaction of the plaintiff that justifies a comparative negligence instruction should not also authorize a reduction of damages under the doctrine of mitigation or avoidable consequences”);
 
 Shaffer
 
 v.
 
 Debbas,
 
 21 Cal. Rptr. 2d 110, 114 (Ct. App. 1993) (refusing to allow an award to be reduced by both the mitigation figure and the comparative negligence figure because the “special verdicts are far from clear that the . . . comparative negligence figure ... is not at least to some extent duplicative of the . . . mitigation-of-damages reduction”).
 

 [83]
 

 In light of this conclusion, we do not reach the homeowners’ contentions regarding the order denying their motion for a new trial, and we dismiss their appeal from that order as moot.
 

 [84]
 

 See, e.g., Hazelwood v. Harrah’s,
 
 109 Nev. 1005, 1009-10, 862 P.2d 1189, 1192 (1993) (noting that “in actions for damages in which the law has provided no legal rule of measurement, it is the jury’s responsibility to determine the amount to be allowed”),
 
 overruled on other grounds by Vinci
 
 v.
 
 Las Vegas Sands,
 
 115 Nev. 243, 984 P.2d 750 (1999).
 

 [85]
 

 NRS 40.655(1)(b)-(g).
 

 [86]
 

 Although Beazer Homes argues that the attorney fees question should be presented to the jury along with the other listed damages measures, it at the same time recognizes that not all of the listed measures are necessarily meant for a jury’s determination; the list also includes statutory interest, which may be, under the particular statute, a calculation for the court to make once liability has been determined by the jury.
 
 See, e.g.,
 
 NRS 17.130; NRS 99.040;
 
 Hazelwood,
 
 109 Nev. at 1009-10, 862 P.2d at 1192.
 

 [87]
 

 117 Nev. 948, 35 P.3d 964 (2001).
 

 [88]
 

 Id.
 
 at 956, 35 P.3d at 969.
 
 Contra City of Garland v. Dallas Morning News,
 
 22 S.W.3d 351, 367 (Tex. 2000) (recognizing the general rule in Texas allowing a jury to determine the reasonableness of statutory attorney fees).
 

 [89]
 

 117 Nev at 956, 35 P.3d at 969.
 

 [90]
 

 Id.
 

 [91]
 

 See
 
 Hearing on S.B. 395 Before the Assembly Judiciary Comm., 68th Leg. (Nev., June 23, 1995) (equating, generally, the NRS Chapter 40 attorney fees provision to other fee-shifting provisions in Nevada law);
 
 cf. Neal v. Honeywell Inc.,
 
 191 F.3d 827, 833 (7th Cir. 1999) (affirming the district court’s method of calculating attorney fees under the federal false claims act’s attorney fees provision, 31 U.S.C. § 3730(h) (1986), and recognizing that while unusually worded, the provision is a fee-shifting law, despite its classification of attorney fees as a component of “special damages”).
 

 [92]
 

 The homeowners, after receiving a favorable verdict on claims for both negligence and negligent misrepresentation, requested attorney fees, apparently solely under NRS 40.655(l)(a). Fees under that statute must pertain to “a claim governed by NRS 40.600 to 40.695, inclusive” and be “proximately caused by a constructional defect.” We express no opinion on whether the homeowners’ misrepresentation claim falls within those NRS Chapter 40 sections, so that all of the requested fees in this case were proximately caused by a constructional defect.
 
 See
 
 NRS 40.615 (defining “constructional defect,” in part, as “a defect in the design, construction, manufacture, repair or landscaping of a new residence”);
 
 Olson
 
 v.
 
 Richard,
 
 120 Nev. 240, 89 P.3d 31 (2004) (concluding that a claim for negligence in a constructional defects matter can constitute an NRS Chapter 40 cause of action).
 

 [93]
 

 See Murphy v. Stowe Club Highlands,
 
 761 A.2d 688, 699-702 (Vt. 2000) (recognizing that, when entitlement to attorney fees can be determined as a matter of law, parties do not waive their right to such fees by failing to submit the question to the jury).
 

 [94]
 

 See Sandy Valley,
 
 117 Nev. at 956, 35 P.3d at 969; NRS 40.655(2) (requiring the court to examine the amount, for reasonableness, of any attorney fees awarded);
 
 Ideal Electronic Sec. Co. v. Intern. Fidelity Ins.,
 
 129 F.3d 143, 150 (D.C. Cir. 1997) (recognizing, when attorney fees are requested pursuant to a contract, that if the “entitlement to attorney’s fees has been ascertained, the determination of a reasonable fee award is for the trial court”);
 
 McGuire
 
 v.
 
 Russell Miller, Inc.,
 
 1 F.3d 1306, 1313-15 (2d Cir. 1993) (concluding that claimants may submit to the jury the legal question of whether there exists a contractual right to recover attorney fees, but once the jury finds in their favor, they have no constitutional right to have a jury determine the reasonableness of the fees awarded, which is an equitable and collateral matter for the court to resolve);
 
 Murphy,
 
 761 A.2d at 699-702 (distinguishing (even while recognizing that there is no bright constitutional line) between attorney fees as damages, which are typically sought in or for a separate suit and present a matter for the jury, and attorney fees as court costs, which are typically sought within and for the same suit and present a matter for the court; adopting the
 
 McGuire
 
 approach and holding that the reasonableness of attorney fees awarded pursuant to contract is an equitable matter; and recognizing that, when entitlement to attorney fees can be determined as a matter of law, parties do not waive their right to such fees by failing to submit the question to the jury).
 
 See generally Costello v. Scott,
 
 30 Nev. 43, 62-63 (1908) (distinguishing between legal and equitable matters, and noting that, “[i]n a purely equity case, it is well settled in this state that a party cannot demand a jury as a matter of right”).
 

 [95]
 

 See Attorney General v. Board of Regents,
 
 119 Nev. 148, 153, 67 P.3d 902, 905 (2003) (noting that, in its de novo review of statutory construction issues, this court must first look to the plain language of the statute).
 

 [96]
 

 Bingham v. Zolt,
 
 66 F.3d 553, 565 (2d Cir. 1995) (holding that the trial court properly denied the plaintiff a jury trial, discovery, and an evidentiary hearing on his request for attorney fees under the federal RICO statute, 18 U.S.C. § 1964(c) (1988)).
 

 [97]
 

 University of Nevada
 
 v.
 
 Tarkanian,
 
 110 Nev. 581, 594, 591, 879 P.2d 1180, 1188, 1186 (1994).
 

 [98]
 

 The lodestar approach involves multiplying “the number of hours reasonably spent on the case by a reasonable hourly rate.”
 
 Herbst v. Humana Health Ins. of Nevada,
 
 105 Nev. 586, 590, 781 P.2d 762, 764 (1989).
 

 [99]
 

 See Chun
 
 v.
 
 Bd. of Trustees of E.R.S.,
 
 992 P.2d 127, 136, 136-42 (Haw. 2000) (analyzing different methods used to award attorney fees in common fund cases and concluding that “the approach to be applied in awarding attorney’s fees in class action lawsuits generally [should] be left to the discretion of the trial judge”);
 
 accord Brundidge v. Glendale Federal Bank, F.S.B.,
 
 659 N.E.2d 909 (Ill. 1995);
 
 see also Lealao v. Beneficial California, Inc., 91
 
 Cal. Rptr. 2d
 
 191,
 
 821 (Ct. App. 2000) (analyzing different methods used to calculate attorney fees in a class action in light of contingency fee considerations and holding that, although the analysis should start with the lodestar amount, “a trial court has discretion to adjust the basic lodestar . . . where necessary to ensure that the fee awarded is within the range of fees freely negotiated in the legal marketplace in comparable litigation”);
 
 Glendora Com. Redevel. Agency v. Demeter,
 
 202 Cal. Rptr. 389 (Ct. App. 1984) (affirming, under contemporary California rules in a non-class action case, the trial court’s attorney fees award, even though the amount awarded was equivalent to that called for in a contingency fee arrangement, because the trial court considered a number of relevant factors supporting its conclusion that the fee was reasonable). Although these cases point out a number of jurisdictions in which the court is to start with the lodestar amount, many of those jurisdictions also permit the court to adjust the amount in consideration of contingency-fee-related factors. As those jurisdictions thereby recognize the potential reasonableness of contingency fee amounts, and since, in Nevada, the district court is already required to consider certain factors when determining reasonableness, we see no reason to require one approach over another.
 

 [100]
 

 85 Nev. 345, 349, 455 P.2d 31, 33 (1969) (recognizing that the factors relevant to determining the reasonableness of an attorney fee award include: “(1) the qualities of the advocate: his ability, his training, education, experience, professional standing and skill; (2) the character of the work to be done: its difficulty, its intricacy, its importance, time and skill required, the responsibility imposed and the prominence and character of the parties where they affect the importance of the litigation; (3) the work actually performed by the lawyer: the skill, time and attention given to the work; (4) the result: whether the attorney was successful and what benefits were derived.” (quoting
 
 Schwartz
 
 v.
 
 Schwerin,
 
 336 P.2d 144, 146 (Ariz. 1959))).
 

 [101]
 

 See,
 
 e.g., Miller v. Wilfong,
 
 121 Nev. 619, 623, 119 P.3d 727, 730 (2005) (noting that the district court has discretion to determine the reasonableness of statutory attorney fee awards, but in so doing, it must consider the
 
 Brunzell
 
 factors);
 
 Schouweiler v. Yancey Co.,
 
 101 Nev. 827, 712 P.2d 786 (1985) (reversing the district court’s order awarding attorney fees and remanding the issue to be evaluated under the
 
 Brunzell
 
 factors);
 
 see also Beattie v. Thomas, 99
 
 Nev. 579, 589, 668 P.2d 268, 274 (1983) (noting that it is an abuse of discretion to award the full amount of requested attorney fees without making “findings based on evidence that the attorney’s fees sought are reasonable and justified”).
 

 [102]
 

 Hazelwood,
 
 109 Nev. at 1011, 862 P.2d at 1192.
 

 [103]
 

 Stickler
 
 v.
 
 Quilici,
 
 98 Nev. 595, 597, 655 P.2d 527, 528 (1982).
 

 [104]
 

 Hazelwood,
 
 102 Nev. 371, 725 P.2d 234 (1986).
 

 [105]
 

 Com. v. Johnson Insulation,
 
 682 N.E.2d 1323, 1333 (Mass. 1997).
 

 [106]
 

 Id.
 

 [107]
 

 Id.
 
 at 1333-34.